## WALTER SMITH *vs.* WILLIAM CLARK.

A testator having devised his *home farm* to his wife for life, with remainder in fee to his daughters as tenants in common, and his other estate to his

son in fee, by a clause in his codicil recited, that since the execution of his will he had *purchased* a wood-lot called *"Swanston's Lot,"* "as a sup-port for" his home farm "and the estate devised to his son," devised the same as follows: "Now, therefore, I do give and devise and bequeath the said parcel of land to my said wife, and my three daughters," (naming them,) "on the express condition, that the same is not, at any time, to be cleared or converted into arable land, but that they are respectively to be allowed to take therefrom as much wood and timber as will be required, and necessary with care for the purpose for which it was purchased as aforesaid." HELD :

That the several devisees took a *fee-simple* interest in *"Swanston's Lot,"* and not a mere *incorporeal hereditament* or *easement*, to cut timber and wood upon it : the attempt to prescribe the *mode in which the lot* was to be used *during all time*, is inconsistent with the devise and void.

A condition annexed to a devise in fee, that the land "shall be at all times held together by those who may be entitled to the same, by virtue of" the will, is inconsistent with the devise and void.

Two different and distinct interests may be created in different persons to the same land ; a right of common, or estovers, or way, may exist in one party, and the absolute right to use the property for all other purposes, in another.

APPEAL from the Circuit Court for Prince Georges county.

*Trespass on the case* by the appellant against the appellee, to recover the value of wood cut by the defendant, upon a tract of land called *"Swanston's Lot."* Plea *non cul.*

*Exception.* The plaintiff proved that the defendant had cut wood from the lot in question, and to show his title thereto, offered in evidence the will of Walter Smith, his father. By the provisions of this will, which are material to this case, the testator devised to his wife Harriett, "during her natural life," three tracts of land, called *"Moore's Plains," "Brock Hall"* and *"Thorpland,"* forming "the estate or plantation on which" he resided, with remainder in fee to his four single daughters, as tenants in common, also part of a tract called *"Strife,"* and a tract called *"Something,"* and all the additions to *"Something,"* with remainder in fee to his son Walter, (the plaintiff,) in case he should survive his mother, and if not, then to the said daughters. He then devised to his said daughters, certain lands in Anne Arundel county, and gave to his wife and his son Walter, "the right and privilege,

each, of taking from time to time, as occasion may require," therefrom, "as much wood and timber as may be necessary for the support of the lands herein devised to my said wife and my said son Walter. The granting to them however of this privilege, is not to be construed as giving to them any power to commit any manner of waste on the woodlands in Anne Arundel county, or to sell wood or timber therefrom, or to take, use, or bring away, more thereof than may be required by the actual and just wants of the lands herein devised to them." He then devised the other portions of his real estate to his married daughter, to his grand-children, and to his son Walter, in fee. He also gave to his wife "during her life, the privilege and right of cutting and taking wood from the land on the west side of" a certain ditch, and to his "son Walter, the same privilege on the east side" thereof: "This privilege they are respectively to enjoy, in regard to all the woodland on the said sides of the said ditch. My wife is also to have the like privilege, in regard to all the woodland lying on the south side of" a certain road.

By a codicil, one of his single daughters having died, he revoked all the devises in the will in her favor, and directed the same to "enure to the benefit of" his three surviving single daughters. He also revoked a devise in favor of his grand-children, and gave the same to his married daughter, and also the devise of the remainder in "*Strife*" and "*Something*," and the additions to "*Something*," and gave the same to his three surviving single daughters, and then by the fourth and fifth clauses of this codicil, devised as follows:

"4th. And whereas, since the execution of said will, I have purchased from Notley Young, a parcel of woodland called "*Swanston's Lot*," and which is particularly described in a deed from said Notley Young and wife to me, of the 15th of February 1844, and which parcel of woodland was purchased by me as a support for the estate on which I now reside, and the estate devised by me to my son Walter: Now, therefore I give, devise and bequeath the said parcel of land, to my said wife, and my three daughters, Salina Huntington, Cornelia and Rozena, and my son Walter, on the express condition

that the same is not at any time to be cleared or converted into arable land, but that they are respectively to be allowed to take therefrom as much wood and timber as will be required, and necessary with care, for the purpose for which it was purchased as aforesaid."

"5th. It is my will and desire, and I do hereby direct, that the lands herein devised to my wife for life, with remainder over in fee-simple, to my three daughters, in that behalf enured, shall be at all times held together by those who may be entitled to the same, in virtue of my will, with the privilege to them of building for their greater accommodation a house on "*Strife*," where some of them live, if they think proper."

The plaintiff further proved that the defendant is not the owner of the *home place* of the said testator, and that he (the plaintiff) is now owner and in possession of the land devised to him by the said testator, and that the home place now belongs to Samuel H. Berry. The widow, Harriet Smith, died before this suit was brought.

The defendant, to show title in himself to "*Swanston's Lot*," offered in evidence a deed from Selina H. and Cornelia, two of the daughters mentioned in the fourth clause of the codicil, conveying all their estate and interest in said lot to him in fee, and then prayed the court to instruct the jury, that if they believe the testimony in this exception, their verdict must be for the defendant, which instruction the court (CRAIN, J.) gave, being of opinion that under this will and codicil, the daughters under whom the defendant claims title, were equally entitled with the plaintiff to undivided fourth parts of "*Swanston's Lot*," and that the defendant, who has acquired their title, is not liable to this action at suit of the plaintiff. To this ruling the plaintiff excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON.

*Daniel C. Digges and Reverdy Johnson* for the appellant, argued:

1st. That the testator's *intent* in making this devise, was to provide for his *home place*, and the estate devised to his son, a sufficient support in *wood* and *timber*, and that such support was to be derived from *Swanston's Lot*. The recital preceding the devising words shows this. The testator there says, that he had *purchased* this lot "as a *support* for the estate on which I now reside, and the estate devised by me to my son Walter." The *devising part* clearly carries out this *intent*. He devises the lot to his wife, to whom he had previously given a life estate in the home place, and to his three daughters, to whom he had devised the reversion in the home place, and to his son Walter, "on the *express condition* that the same is not at any time to be converted into arable land, but that they are respectively to be allowed to take therefrom as much wood and timber as will be required, and necessary with care, *for the purpose for which it was purchased as aforesaid:*" that is, a *support* for his home place, and the estate devised to his son Walter. There can be, in *point of fact,* no doubt what the *intent was*. He never *designed* to give an interest in this wood lot, which by its user could work the destruction of the purpose for which it was purchased. The intent clearly was, only to give the use of the wood for the benefit of the *two estates*. If by the act of 1825, ch. 119, a fee is created in the daughters in this lot, the same construction would give to the *wife* also a *fee-simple* interest in it, which would give her a greater estate than she had in the home place. She then could have sold out her interest in this lot, and to this extent the object and purpose of the testator in purchasing it would be *frustrated*.

2nd. That there is nothing *illegal* in the *intent* of the testator thus manifested. The act of 1825, ch. 119, did not intend to debar a testator from creating an estate *less than a fee*. It only meets and provides for the case of a simple devise to a devisee, *unexplained* and *without words of inheritance*, and says that such a devise shall operate to *pass the fee*. But it expressly gives the testator power, by controlling words, to prevent such effect. We are not to read this will as *stopping* at the devise, and then apply the act so as to make that devise

a fee-simple estate, and then decide that any qualifying clause inconsistent with a fee is void. But we must look to the whole context, and see whether by *any words used* the testator *intended* not to *give a fee*, and if we find such words then the devisee is to take only such an estate as is given. Even considering that the devisees take a fee-simple interest under this devise, the *restriction imposed* is but a *partial restraint* upon *alienation*, and not therefore void. 1 *Jarman on Wills*, 811. But a man can do *by will* what he can do *by deed*, and by a deed he can sell and convey the *privilege* of taking wood and timber whilst he retains the fee in the land. This is the doctrine of *estovers*. 16 *Johns.*, 30, *Leyman vs. Abeel*. 10 *Wend.*, 639, *Van Rensselaer vs. Radcliff*.

3rd. What is the estate given by this devise? There are no words conveying the *fee-simple*. The will shows, that when the testator intended to give a fee he knew how to do so by using the appropriate word, *"heirs."* No such word is used in this clause of his will. The devisees are to have the *wood only*. The fee in the land descends to, and remains in the heirs at *law of the testator*, undisposed of. The right to the wood may exist in one, and the fee in the land in another. Now, in what *character* had these devisees the right to use this wood? It was given to them as an *incident* to the *estates devised to them*. It was one *entire* and *inseparable* use for one *single object*—for *house-bote* and *fire-bote* for the farms, which they took under the will. It is a thing not in its nature to be *separately disposed of*. The English law on this subject is well understood. This is a *common of estovers*, which cannot be *divided* nor *conveyed separately*, nor be enlarged so as to defeat the intent of the testator. The cases already referred to in 16 *Johns.*, 30, and 10 *Wend.*, 639, are conclusive upon this point, and show that the construction we put upon this devise is the correct one.

*Thomas G. Pratt* for the appellees, argued:

1st. That the devise in question, conveyed to Walter Smith the son, and his sisters therein named, a *fee-simple estate* in *"Swanston's Lot."* The words are, "I do give and be-

queath the said parcel of land to my said wife, and my three daughters and my said son Walter," without any limitation over or any words of inheritance. Such a devise the act of 1825, ch. 119, says, *shall convey a fee.*

2nd. The right of alienation is a necessary incident to a fee-simple estate, which the testator in this case does not attempt *to restrict,* and which he had no power to prohibit, and the deed from the devisees to the defendant in this case, passed to him all the rights in the property conveyed, which they had acquired under the will of their father. It is to be presumed, that the testator intended to *confer a benefit* upon his *children,* to whom he devised this lot, which he assumes to be adequate for the support, in wood and timber, of the land which he had devised to his daughters, and also the land which he had devised to his son. Now the extent to which the theory on the other side legitimately carries us is, that the quantity of wood and timber necessary for the support of either place, would be the measure of interest conveyed to the several devisees, and it would follow, that the interest, according to this theory, which passed to the son, was the right to take so much and no more wood and timber as was necessary for his estate, and the interest which passed to the daughters, was the right to take so much and no more than was sufficient for the estate devised to them. The non-user by either devisee, of the rights conferred by this construction of the codicil, would not increase the rights or interests of the co-devisees, and consequently the appellant has no cause of complaint, as it is not alleged or proved, that his sisters or their grantee have taken more than would have been necessary for the estate devised to them, or that the quantity taken by the appellee would deprive the appellant of any right conferred on him by this codicil.

3rd. There can be no doubt that the daughters under the will, and the third clause of the codicil, took an *unconditional* fee in the lands therein devised to them. These lands, in fact, have been sold under a decree in equity, and Berry is the present owner of the home place, and the appellee is the owner of the lands mentioned in the third clause of the codicil. The interest of the daughters in *"Swanston's Lot,"* was not affected

by this decree or sold under it, but was subsequently sold and conveyed by two of them to the appellee. Now we say, that the interest of the daughters in *"Swanston's Lot,"* was not divested by the sale of land in which they had an undisputed unconditional fee, and consequently such rights have not vested in Berry, because of his ownership of the home place. Such a construction would make the *homestead,* and not the daughters to whom it was devised, *the object* of the testator's bounty.

4th. That the condition annexed to the devise relied on here, "that the land is not, at any time, to be cleared and converted into arable land," is inconsistent with the estate given to the devisees, and therefore void. 1 *Jarman on Wills,* 810. 4 *Kent's Com.,* 131.

5th. That the plaintiff must show title to the land upon which the trespass is committed, and his interest must be entire and exclusive: and one tenant in common cannot, consequently, bring trespass or trover against his co-tenant, and therefore, that the plaintiff here had no such interest in the land as would enable him to bring this suit. 7 *G. & J.,* 321, *Dorsey vs. Eagle.* 1 *H. & J.,* 295, *Norwood vs. Shipley.*

MASON, J., delivered the opinion of this court.

The testator, after having devised his *home farm* to his wife Harriet Smith, for her natural life, with remainder over in fee, to his four single daughters, as tenants in common; and his other estate, to his son Walter Smith in fee, he proceeds by the fourth clause of his codicil, to make the following additional devise, to wit:

"4th. And whereas, since the execution of the said will, I have purchased from Notley Young a parcel of land called 'Swanston's Lot,' and which is particularly described in a deed from said Young and wife to me, of the fifteenth of February 1844, and which parcel of land was purchased by me as a support for the estate on which I now reside, and the estate devised by me to my son Walter, now therefore I do give and devise and bequeath the said parcel of land to my said wife and my three daughters, Salina Huntington, Cornelia and Rozena, and my son Walter, on the express condition that the

25       v.10

same is not, at any time, to be cleared or converted into arable land, but that they are respectively to be allowed to take therefrom as much wood and timber as will be required and necessary, with care, for the purpose for which it was purchased as aforesaid."

To declare the proper meaning and legal effect of the above clause, is our duty upon the present appeal. The question as it arises upon the record is, whether the plaintiff, Walter Smith, acquired such a title to Swanston's Lot, under the above recited clause of the codicil, as will enable him to maintain this action against the defendant, as alienee of the other devisees? In other words, whether the several devisees took a fee-simple interest in Swanston's Lot, or a mere incorporeal hereditament, or easement to cut timber, &c?

That two different and distinct interests may be created in different persons to the same land, cannot be denied, as for example, a right of common, or estovers, or way, may exist in one party, while the absolute right to use the property for all other purposes may exist in another. And, in this case, it was clearly within the power of the testator to have devised two distinct interests in the land in question to different persons, as the fee to one, and the mere right to cut wood therefrom to another, but the point is, does the language of the will manifest such an intention, and in such terms as to effectuate it? We think not.

It is clear to our mind that the purpose of the testator was, to confer a substantial, valuable benefit upon each of the devisees mentioned in the clause in question, and that benefit was to consist of the enjoyment of *the whole estate*. No interest, in terms, is attempted to be reserved or carved out of the land for any other person, and if any other did take, it would be by mere operation of law, and contrary to the clear intention of the testator. The difficulty which has arisen, grows out of the circumstance, that the testator attempted to do that which the law will not permit him to do, to the extent he proposes, namely, to prescribe the mode by which this benefit or property, during all time, was to be enjoyed by the devisees. To adopt the views of the appellant, the interest in this land, as a

distinct right, would virtually become unalienable, or rather a right inseparable from that to sell the main tract. It is substantially an attempt to restrict a devisee from ever dividing and selling in separate parcels his real estate, which would be a condition wholly inconsistent with a fee-simple interest, as well as public policy. As we have said, the testator designed this land as *a benefit* for his children, and none others. If they think proper to use that right or benefit in a mode different from that designed by the testator, or to abuse or sacrifice it, no one but themselves is prejudiced thereby. There are no rights or interests reserved in others, which would be invaded by such a course.

A similar effort is made by the testator, in the fifth clause of the codicil, wherein he says, that the land devised to his wife and daughters, for life to the first, and in fee to the latter, "shall be at all times held together by those who may be entitled to the same, by virtue of my will." This is but in furtherance of his purpose elsewhere manifested in his will, to have his whole estate kept together by his family, and is an attempt to annex a condition to a fee-simple estate, wholly inconsistent with it.

We think we can discover a marked difference between the cases cited and relied on by the appellant's counsel, and the one before us. In all those cases there were distinct, valuable, but not conflicting interests in different parties to the identical thing, and the point in each was, merely as to the extent and character of those interests. The *thing or land* remained entire, while the interests in it were distinct. In the case of *Leyman vs. Abeel*, 16 *Johns. Rep.*, 30, there was no question as to where the fee in the realty was, but the point was as to an incorporeal hereditament, how and by whom it was to be enjoyed and aliened? Here, on the other hand, the inquiry is, where is the fee, and in whom did the testator design to deposit it? The interest in these several devisees were intended to be identically the same. The fee is not in one, with an incorporeal hereditament in the other, but they are tenants in common of one and the same interest, and that interest is, we think, a fee-simple, subject to partition.

We cannot discover how any party can be prejudiced by the

construction we have given this clause of the will. The portals of the grave having closed upon the testator, he no longer feels any interest in Swanston's Lot, or any other lot, except that to which his course of life in this world may have consigned him in the other. Swanston's Lot was designed as a support, in timber and fuel for the main tracts, and if prevented from that purpose, it can only be done by those who own the main tracts, and they alone will be the sufferers. If the value of the tract sold to Berry, has been impaired, by separating it from the wood lot, the former owners sustain the loss. Clark and Smith, each having an absolute and independent interest, can, by partition, use it as they please, and without conflicting with one another; and it would seem to matter not whether their interests were diffused over the whole lot, as if it were an incorporeal hereditament, or were condensed and concentrated upon a part.

In the opinion we have given, we have not deemed it necessary to say any thing upon the question, how far a restriction upon a devisee *not to convert woodland into arable land,* would be inconsistent with public policy, and therefore void?— a question which need not be decided on this appeal.

Believing the judgment below is in accordance with the true and legal effect of the will of Walter Smith, we affirm it.

*Judgment affirmed.*

In a case in equity between the same parties, in which the appellant Smith had filed a bill for an injunction, to restrain the appellee from cutting wood upon this lot, and which was argued with the preceding case, and by the same counsel, MASON, J., delivered the opinion of this court.

The bill in this case prayed for an injunction, to prevent the defendant Clark from committing trespasses by cutting timber, &c., on *Swanston's Lot,* devised in the will of the late Walter Smith. The clause of the will presented on this appeal, being the same that has already been interpreted by this court, in a case at law, between the same parties, we affirm the decree disolving the injunction, for the reasons assigned upon the previous appeal.

*Decree affirmed with costs.*