TRINITY METHODIST EPISCOPAL CHURCH, SOUTH, *vs.* GEORGE B. BAKER ET AL.—E. B. PRETTYMAN ET AL. *vs.* GEO. B. BAKER ET AL.

*Charitable and Religious Uses—Valid and Invalid Devises and Legacies—Trusts Void for Uncertainty—Restraint on Alienation—Perpetuities—Legacy to Educational Institution with Direction as to its Application.*

Testatrix bequeathed a sum of money to an individual in trust to pay and distribute the same "among and to persons and charitable institutions the names of which and the portions to be paid to each beneficiary will appear in a memorandum which will hereafter be prepared by me or at my request."  The testatrix died without having prepared a memorandum.  *Held,* that the bequest is void because made upon a trust not declared.

A bequest of a sum of money to an incorporated church, with directions to apply the income to the support of the pastor of the church, is valid.

Testatrix gave a sum of money to a religious corporation directing it to invest the principal and pay the income to the "Trinity Auxiliary of the Women's Foreign Missionary Society of the M. E. Church, South, to be included in the receipts of said society and remitted to the Treasurer of the Baltimore Conference Society," etc.  The auxiliary was an unincorporated, voluntary association which trans-

mitted the money raised by it to the Treasurer of the Baltimore Conference, by whom it was sent to a general missionary board in another State.   *Held*, that this bequest creates a trust which is void because it could not be enforced by a Court of Equity.

A sum of money was bequeathed to a church corporation with directions to pay the income "towards the support of the superannuated preachers, their widows and orphans, of the Baltimore Conference of the M. E. Church, South."   The evidence showed that the allowance of aid to superannuated preachers was under the absolute control of the Board of Finance of the Conference of the M. E. Church to the discipline of which the legatee is subject, and that the legatee would have no control over the fund after paying it to the conference.   *Held*, that the trust is void because unenforceable in equity.

A church corporation was directed by a will to give the income of the fund bequeathed to it "to the infant class of the Sunday-school of said church to be contributed by said class for the support of a little girl in one of the schools under the care of the Women's Foreign Missionary Society of the M. E. Church, South."   *Held*, that since the church corporation does not take the money so bequeathed for its general purposes but upon a trust, the beneficiary of which is wholly indefinite, the bequest is void.

Testatrix devised certain real estate to three trustees and directed that if the Women's Home Mission Society of the M. E. Church, South, should have become a body corporate at the time of the probate of the will and should agree to accept and use said real estate upon certain designated conditions, then the trustees named as devisees shall "convey said homestead property to said Women's Home Mission Society to hold to the use thereof so long as said society shall continue to use said property for said purposes with full authority to erect buildings thereon for mission meetings, lodgings, orphanage or any purpose connected with mission work, and without power to sell or alienate said land or any part thereof."   By the next item of her will testatrix gave to the same trustees a sum of money in trust to pay over to the Women's Home Mission Society upon a compliance with the same conditions.   *Held*,

1st.  That since the trustees named as devisees would not be authorized to convey the real estate upon any other terms than those named by the testatrix and since she intended that the estate should forever remain *extra commercium* and beyond the power of alienation, the devise is void, being in violation of the rule against perpetuities.

2nd. That since the bequest of the money is interwoven with and dependent upon the invalid devise of the land that bequest is void.

Testatrix also bequeathed a sum of money to the trustees of the Randolph-Macon College " to be applied to aid deserving and promising young women, especially such as expect to enter upon mission work,

to attend the Randolph-Macon Woman's College, at Lynchburg, as students, such aid to be either by loans or free scholarships as said trustees may deem best. The receipt of the treasurer of the said board of trustees shall be a complete discharge of ¦my executors." The will also contained in another item a legacy to the "Woman's College located at the City of Lynchburg for the education of one or more worthy girls." The college at Lynchburg was organized and controlled by the trustees of the Randolph-Macon College for the purpose of carrying out its general objects. *Held,*

1st. That in the last mentioned legacy to the Woman's College there is a misnomer, and the testatrix intended the trustees of the Randolph-Macon College to take the same.

2nd. That these bequests are valid, not being given upon a trust, but directly to the corporation, to be used by it within the scope of its corporate functions.

Appeals from a decree of the Circuit Court No. 2, of Balmore City, (STOCKBRIDGE, J.)

The cause was argued before FOWLER, BOYD, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Richard M. Venable* and *Charles McH. Howard* for Trinity M. E. Church, appellant.

The Maryland law upon the subject of charitable uses originated from the well-known case of *Baptist Association* v. *Hart's Executors,* 4 Wheat. 1, decided by the Supreme Court of the United States in 1819. In this case the Court decided that the jurisdiction of chancery to enforce trusts for charitable uses, when the persons to be benefited were not designated with that certainty which is necessary to support a private trust, which jurisdiction had long been exercised in England, was dependent upon the Statute of Elizabeth, commonly known as the statute of charitable uses; and that this statute was not in force in Virginia (from which State the case arose), and that hence the beneficiaries of such a trust must be named or designated with the same certainty that is requisite in a private trust, in order that the trust may be enforceable, or a gift for such purpose be valid.

This principle was followed in this country by nearly all the Courts in which the question arose, though there was some dissent, until the celebrated *Girard will case* (*Vidal* v. *Girard's Ex.*, 2 Howard, 127), was decided in 1844. In this case, which arose from Pennsylvania, the question was more thoroughly discussed and considered, and it was shown, and so decided by the Court, that the equitable jurisdiction to enforce trusts of the nature under consideration was not dependent upon the Statute of Elizabeth, but had in fact been exercised in many cases before that statute. In the words of the Supreme Court in *Ould* v. *Wash. Hospital*, 95 U. S. 303, " the former idea was exploded " (*i. e.*, by the *Girard will case*), " and has since nearly disappeared from the jurisprudence of this country. On reading the Statute (of Eliz.) one cannot but feel surprised," etc.

Some of the States, however, refused to follow *Vidal* v. *Girard's Ex.*, and reverse the prior decisions. Thus, in 1879 the U. S. Supreme Court reaffirmed *Baptist Assoc.* v. *Hart* as the law of Virginia, saying : " It is believed that such (*i. e.*, the contrary doctrine) is the accepted rule in all of the States of the Union, except Virginia, Maryland and North Carolina. *Kain* v. *Gibboney*, 101 U. S. 362.

After a long series of cases reaffirming the earlier decisions, the Virginia Supreme Court has lately reversed all its precedents and adopted the more liberal rule. *P. E. Soc.* v. *Churchman's Rep.*, 80 Va. 718. Reaffirmed in *Trustees* v. *Guthrie*, 86 Va. 125. And North Carolina appears to be in line with the other States. *Miller* v. *Atkinson*, 63 N. Car. 537.

In the leading case of *Dashiell* v. *Atty.-Genl.*, 5 H. & J. 392, and 6 H. & J. 1, the Maryland Court of Appeals adopted the doctrine laid down in *Baptist Assoc.* v. *Hart's Ex.;* and these cases have been followed in a number of subsequent cases, which are doubtless cited on the brief for the next of kin. Simultaneously, however, with the growth of this principle in Maryland, a class of cases has been recognized in which the validity of gifts for charitable pur-

poses does not depend upon the existence of definite *cestuis que trustent*, who could sue in equity to enforce the use declared for their benefit.    This class of cases includes all gifts for charitable or religious purposes *to a corporation*, when the trusts expressed " are within the scope of the corporate functions and work " (*Eutaw Church* v. *Shively*, 67 Md. 493), and the objects of the trusts are sufficiently defined to be enforceable.    It is apparent that the property of any corporation is, in a general sense, a trust fund.    It is dedicated to the corporate purposes, and any attempted misapplication of corporate property can be restrained by a Court of Equity upon the application of any member of the corporation, and sometimes upon the application of other parties.

There never was a corporation whose purposes were of so definite a character as to relate only to the benefit of one or more definite individuals.    On the contrary, the purposes of all corporations, and especially of all eleemosynary corporations, are necessarily of an indefinite character, if we regard this (definite beneficiaries) as a test of definiteness. Thus, we have, for instance, in Baltimore City, the Association for the Improvement of the Condition of the Poor of Baltimore City, whose objects are described in its name. These objects are precisely such as, in the case of a number of gifts to individuals, have been held of so indefinite a character as to invalidate the gift, and yet there cannot possibly be any doubt but that all the property of this corporation (the Poor Association) is impressed with a " trust " of precisely this nature, that is to say, the corporation is formed to apply it to these very purposes, and there is ample jurisdiction in a Court of Equity to restrain any misappropriation to other than these purposes.

It is evident, therefore, that a Court of Equity has ample jurisdiction to enforce the proper application of funds held generally by a corporation, no matter of how "indefinite" a nature the corporate purposes may be.    From the existence of this jurisdiction has been derived the validity of

gifts to a corporation to be applied to some one or more of
its corporate purposes, or to be held in trust for some one
or more of its corporate purposes.    The same jurisdiction
that suffices to restrain the misappropriation of general cor-
porate funds is available to restrain the misappropriation of
a specific fund, held by a corporation for some one or more
of its corporate purposes, as distinguished from its general
corporate purposes.    It is further to be noted with respect
to gifts of this character that, for the same reasons, the
rule against perpetuities has no application, although the
uses or purposes may be so expressed as to continue beyond
the period fixed by that rule.    See *Barnum* v. *M. & C. C. of
Baltimore*, 62 Md. 291–297; *Crisp* v. *Crisp*, 65 Md. 422;
*Eutaw Place Church* v. *Shively*, 67 Md. 495; *Peter* v. *Carter*,
70 Md. 139; *Halsey* v. *Convention*, 75 Md. 281; *Dom. &
For. Miss. Socy.* v. *Gaither*, 62 Fed. Rep. 422; *Hanson* v.
*Little Sisters of the Poor*, 79 Md. 434.

Now, if we apply the principles enunciated in these cases
to that portion of the present legacy, which is now under
consideration, it is clearly good.    (1.) We have a corporate
trustee, competent to take and hold the fund, (2) the pur-
poses expressed are within the scope of its corporate func-
tions and customary work ; and (3) the method of applying
the fund is expressed with sufficient definiteness.

In considering what uses and purposes are within the
scope of the corporate functions of a church, or are an
integral part of its work, we need not expect much assist-
ance from its charter.    The Code, in authorizing the incor-
poration of religious bodies (Art. 23, sec. 205, &c.), does
not, as in the case of other corporations, enumerate what
the objects of such an organization shall be ; it assumes a
knowledge of the usual objects and methods of the various
bodies which constitute the different branches of the
Christian Church ; and so likewise does the instrument of
incorporation.    Such knowledge is derived partly from the
judicial notice of the beliefs and methods common to all
churches, which the Court is entitled to take as a part of

the Christian religion (*Wharton on Evidence*, sec. 284), and from the evidence in the cause (as was done in the case of *Eutaw Church* v. *Shively, &c.*) That the propagation of Christianity among the heathen by the instrumentality of foreign missions is an important branch of the work of every Christian church, requires therefore no evidence to establish. Its importance as a branch of the work of the M. E. Church, South, and of Trinity Church, abundantly appears from the testimony in the cause, especially from the book of church discipline. If then this work is within the scope of the legitimate functions of Trinity Church, the only question remaining is whether the testatrix has designated with sufficient certainty and definiteness the manner in which it shall be administered.

In the case of *Church Extension Society* v. *Smith*, 56 Md. 362, relied on by counsel for the next of kin, the testator devised the residue of his estate to an individual in trust to be sold, and out of the proceeds to pay a certain sum over to the Church Extension of the Methodist Episcopal Church (a corporation), to be used as a perpetual loan fund, to be used in aiding "necessitous" churches. The Court seems to have treated this as a gift to an individual for an indefinite purpose, regarded in which light it was void for lack of a definite *cestui que trust*. The use or trust in question was, however, in that case incident to a gift to a corporation, and the proper inquiry should have been whether or not the special purpose to which it was directed to be dedicated was within the charter purposes of the corporation. In the charter of the Church Extension Society its corporate purposes were expressed as follows: " Section 4. That this society (denominated the Church Extension Society of the Methodist Episcopal Church) shall be organized for the purpose of assisting the several annual conferences of the M. E. Church to extend and establish the institution of Christianity throughout the United States and Territories by aiding, whenever necessary, to secure suitable houses of

:worship and such other church property as may promote the general design."

If, therefore, in that case, the fund was dedicated to one of the charter purposes of the corporation, the case is in conflict with the other cases which we have cited, in which the purposes expressed were no more definite. If the uses expressed were not within the charter purposes, then the case is not in conflict with these other cases, nor is it applicable to the present case. Moreover, the latter cases in which *Church Extension* v. *Smith* is cited, restrict the decision in that case to the sole ground that no one could define which churches were or are " necessitous." Now there is no such uncertainty in the present case. On the contrary the directions are elaborately minute. The course the income is to take is precisely and accurately defined until it is finally lodged with the Women's Foreign Missionary Society, a corporation, as an unqualified gift for its general corporate purposes.

This portion of the legacy in the present case is, moreover, sustainable upon other grounds. It is made for the benefit of a definite *cestui que trust*, the Women's Foreign Missionary Society, for its general corporate purposes. Even, therefore, if we regard the purpose as not within the proper scope of the corporate purposes of Trinity Church, and reject the intermediate agencies which the testatrix has designated, the case would come within the general principle that equity will not permit a trust to fail for want of a trustee. *Perry on Trusts*, secs. 38, 45, 240, 248.

" *As to five hundred dollars thereof, to be paid towards the support of the superannuated preachers, their widows and orphans, of the Baltimore Conference of the Methodist Episcopal Church, South.*" In the discipline of the M. E. Church, South, the " superannuated preachers " constitute a distinct class. They are supported, not by the respective churches of which they have been pastors, which under the itinerant system used in the M. E. Church would be impracticable, but each conference is charged with the

support of its own superannuates. "Baltimore Conference" of the M. E. Church, South, is one of the fifty or more geographical divisions of the M. E. Church, South, and comprises the greater part of the State of Maryland and some adjacent territory.

In opposition to the validity of this portion of the legacy, it is urged that the decision in *Church Extension* v. *Smith, supra,* that a bequest of a sum to a corporation to be used as a loan fund, to be loaned out to necessitous M. E. Churches, was void for indefiniteness, is precisely analagous to the disposition directed in the present case. If we read the opinion in that case without considering the doctrines therein stated as having been greatly modified by the subsequent decisions cited above, it would indeed be difficult not only to reconcile the validity of the disposition now in question with that case, but to reconcile the validity of any of the numerous gifts which have since been upheld, with the decision in that case. But we are already confronted with the difficulty of either treating this case as overruled, or else distinguishing it from a gift to a corporation to establish a chair in an educational institution for teaching the mechanic arts (*Barnum* v. *M. & C. C.*), for the promotion of the worship of God according to the forms and ceremonies of the Presbyterian Church (*Crisp* v. *Crisp*), to be applied to the Sunday-school belonging to a church (*Eutaw Church* v. *Shively*), to constitute a perpetual fund for education (*Peter* v. *Carter*), to be held as a place for a church school for boys, with an endowment fund for the same purpose ; for the support of a rector and for repair of a chapel (*Halsey* v. *Convention*), to be applied to the maintenance of a parish school (*Hanson* v. *Little Sisters.*) And we must also give due effect to the language which the Court has used in the opinions filed in these later cases.

If, therefore, we are not to regard *Church Extension* v. *Smith* as overruled, we must distinguish it from these cases. In *Crisp* v. *Crisp* the distinction drawn is that as no one can define what a necessitous church is, the object specified was

too vague and indefinite to be valid.    But the present case
no more resembles *Church Extension* v. *Smith* in this respect
than any of the above.    Superannuated preachers, that is
preachers who have been relieved of their active work and
retired by the church, constitute a perfectly definite class.
Without doubt a census could be taken of the precise num-
ber of persons occupying this *status* in the bounds of Bal-
timore Conference, as well as of their widows and orphans.
But who could take with any accuracy a census of the
" necessitous churches " within the same limits ?    What
churches are not " necessitous ?"    The distinction can bet-
ter be appreciated, perhaps, if we consider the bequest in
the present case as having been made in favor of the
" necessitous preachers " within the same district.    Then
we would have a trust for the benefit of an unascertained
and unascertainable class, and the authority of *Church Ex-
tension* v. *Smith* would be precisely in line.

*As to the bequest to be given to the infant class of the Sun-
day-school.*    We have already considered the question
whether to contribute to foreign missions, and to do so
through the agency of the Women's Foreign Missionary
Society is an integral part of the work of Trinity Church.
The propriety of so doing through the agency of the Sun-
day-school is established, it is submitted, by the custom
prevailing in the entire church, of organizing every Sunday-
school, as far as practicable, into a missionary society ; a
custom justified by two considerations : first, that the mis-
sionary work of giving a Christian education to children in
heathen countries is essentially Sunday-school work ; and
secondly, that to teach the children belonging to the Sun-
day-school the habit of contributing to foreign missions is
part of their Christian education.    With respect to the
charge of indefiniteness, it is based, it is submitted, upon an
erroneous view of the rule as to vagueness which should
govern in the case of gifts to corporations to be applied
to some one of their corporate objects.    In such cases the
rule of defined *cestui que trust*, who could sue to enforce the

carrying out of the uses, is supplanted by the sole test of purposes within the scope of the corporation, expressed with sufficient definiteness. It would be, of course, impossible that there should be in the present case a " little girl " who could sue to enforce the uses here expressed, but just as much was it impossible for any body of students or any member of the McDonogh faculty to sue the city of Baltimore to enforce the establishment and maintenance of the " chair " directed to be founded in the *Barnum will case.* In fact, the direction in the present cases resembles a bequest to establish a scholarship, as to the validity of which, under the cases in this State, there could be, it is submitted, no question.

*E. J. D. Cross* and *John Phelps*, for the Trustees of the Randolph-Macon College, E. B. Prettyman *et al.*, trustees, and other appellants.

*As to the legacies to the Randolph-Macon College and the Woman's College.* The first question which arises in construing these clauses is : Whether the gifts to the charitable corporations mentioned are given to them absolutely, or whether under the conditions presented the Court can find an implied trust for the purposes mentioned ? At the outset we see that the testatrix has not expressly created any trust or fiduciary relation in these clauses. Whether or not such was her intention is the first consideration. In order to defeat the operation of these clauses by reason of uncertainty of object or other reason, it is incumbent upon the objector to establish the fact that the trusts exist and were contemplated by the testatrix. It has been seen that the testatrix was a person of no little knowledge of her own affairs, and she was aided by legal advice in drawing her will. If she had intended to create a trust it naturally suggests itself—would she not have expressed herself? In other parts of the will where she evidently intended to create trusts she expressed that intention in formal and appropriate terms. It will not be held that a will creates a

trust unless it clearly appears that such was the intention of the testator. *Pratt* v. *Sheppard, etc., Hospital*, 88 Md. 624; *Meredith* v. *Hemage*, 1 Sim. 542. The Court below upheld these two legacies, saying that even though they should be held to be trusts, yet even then the gifts would be valid upon the known rule that the trustee, being a corporation and capable of taking, the purpose declared in the will is. the furtherance in part of one of the specific purposes for which the corporation was chartered.

*As to the devise of the land called Friendsbury to E. B. Prettyman et al., trustees.* This clause, as interpreted by the Court below, vitiates the gift upon the authority of *Reed* v. *Stouffer*, 56 Md. 236, and *Rizer* v. *Perry*, 58 Md. 117. The argument upon which this is founded, briefly, is : The trustees take a fee-simple upon trust to convey; they dispose, not of the fee, but a fee coupled with conditions subsequent ; upon failure of condition the gift cannot revert to the trustees, for they cease in that capacity upon transferring title ; therefore, the trust is one to a definite trustee for a specific purpose and designated beneficiary, but beyond the control of a Court of Equity, hence, the trust fails.

We respectfully submit that the learned Court erred in its interpretation of this clause. We think it unquestionable that by this clause the testator did devise an estate in fee of the character known as a fee upon limitation ; of which the trustees are the mere instruments or conduits of conveyance, transferring neither more nor less than they get ; that a possibility of reverter remains in the heirs of the testatrix, and upon the use by the society of the property in violation of the condition the estate reverts to the heirs of the testatrix ; that the expression " so long as said society shall continue to use said property for said purpose " is a valid and usual limitation upon the fee ; that the provision " without power to sell or alienate said land or any part thereof," should upon reason and authority be held a valid restraint as upon a charitable corporation, but that, if void, will merely be stricken out without affecting the gift or interfering with the intention of the testatrix.

An estate in fee upon limitation is a species of estate upon·condition subsequent which, having vested, continues until the happening of a specified event upon which it reverts to the grantor and his heirs.    It differs from an ordinary estate upon *condition* subsequent chiefly in that in the latter the grantor must do some overt act to take advantage of the broken condition, while in the former, the estate ends *ipso facto* upon the contingency specified, and vests by operation of law in the grantor and his heirs.    2 *Bla. Com.* 155; 4 *Kent Com.* pages 9, 10, 11, 126; 2 *Washb., Real Prop.,* *457, *458, *459; *First Universalist Soc.* v. *Boland*, 155 Mass. 171.    While it is a matter of interpretation whether the restriction is a condition or a limitation, the expression "so long as, etc.," is one of the usual formulæ for creating a limitation."    2 *Washb., Real Prop.,* *458; *Tiedeman, Real Prop.*, sec. 281.

A grant in trust for certain purposes, "and to and for no·other use, intent or purpose whatever," is good, and a violation of the conditions, by putting the property to other uses, terminates the gift, and the estate reverts to the grantor's heirs.    *Reed* v. *Stouffer*, 56 Md. 236, 254; *Newbold* v. *Glenn*, 67 Md. 492; *Second Univ. Ch.* v. *Dugan*, 65 Md. 460; *Dolan* v. *Baltimore*, 4 Gill, 304; *Brown* v. *Renshaw*, 57 Md. 67.    In these cases the conditions imposed by the grantor or devisor were all recognized by the Court of Appeals as valid conditions, upon breach of which the estate reverted to the grantor.    And in all these cases, the reverter to the heirs of the grantor was not interrupted by the fact that the property had been given through trustees.    In *Dolan* v. *Baltimore*, 4 Gill, 394, 405, the point was directly decided that the trustees, Dolan, etc., had no interest in the reversion upon breach of the condition, and had no standing in a Court of Equity to enforce the forfeiture, but the heirs alone could claim reversion.    There was there an express reversion to the heirs, it is true, but the principle applies to all the cases cited.    They all hold that the right of reversion, whether expressed or not, belongs always

alone to the grantor *imposing the condition,* or his heirs, who alone have the right to forfeit the estate upon condition broken or re-enter upon the limitations of the estate.    2 *Washb., Real Prop.,* secs. 14, 15; *Kelso* v. *Stigar,* 75 Md. 389; 4 *Kent, Com.* 127.    And not even an Act of Legislature could so defeat the reversionary right of the grantor and his heirs, that the grantee could give a good title in breach of the condition.    *Kelso* v. *Stigar,* 75 Md. 376; *Second Univ. Soc.* v. *Dugan,* 65 Md. 460.    Indeed, it is suggested that upon failure of heirs the reversion would escheat to the estate, rather than to any intermediate grantor.    *Kelso* v. *Stigar,* 75 Md. 389; *Reed* v. *Stouffer,* 56 Md. 253.    And this is consonant with the fundamental principles of the law of conditional estates, *i. e.,* that the benefit of a condition in a grant can be reserved only for the grantor and his heirs, and not a stranger ; nor can it be alienated or assigned, or pass by grant of the reversion at common law.    2 *Washb., Real Prop.,* sec. 14, 15.

· The reservation need not be expressly reserved to the grantor and his heirs, (as in *Dolan* v. *Baltimore,* 4 Gill, 394) ; it is reserved in him as a matter of course.    Indeed, the usual rule both at common law and in Maryland is that the reservation cannot be for a stranger.    *Venable, Real Property,* 107.    But equity will enforce in favor of the beneficial reversioner when the condition is reserved in a trustee. *West* v. *Briscoe,* 6 H. & J. 460; 2 *Washb., Real Property,* sec. 14, 15.    It is a present vested right in the nature of a reversion, and it is not subject to the rule against the remote vesting of estates, *i. e.,* rule against perpetuities.    2 *Washb., Real Prop.,* sec. 26; see especially *First Univ. Socy.* v. *Boland,* 155 Mass. 171.

The clause, " so long as said society shall continue to use said property for said purposes, " being then a limitation upon a fee-simple estate, it is not a restraint upon alienation, and hence, of course, creates no " perpetuity," *i. e.,* perpetual inalienable estate.·    *Gray on Perpetuities,* sec. 2, 140.    It anticipates merely a *non-user* of the property by

the society for certain purposes.   The society, for example,
might cease to use the property for those purposes, yet
never having attempted to sell or alienate it.   But the
estate would, nevertheless, thereupon cease, and would
immediately revert to the heirs.   *Arthur* v. *Cole*, 56 Md.
100; *Reed* v. *Stouffer*, 56 Md. 236; *Mitchell* v. *Mitchell*, 29
Md. 581.

A condition, in order to be illegal, must be an express
condition that the grantee shall not *alienate*, or until he
*alienate*, or so long as he holds, *i. e.*, *possesses*, the property,
or other words importing alienation.   *Gray, Restraints on
Alienation*, sec. 10, 12.   As a grant of a farm to A " so
long as he shall *hold* (*i. e.*, possess) and till the same."
This is a void condition, and the estate passed a fee-simple.
*Stansbury* v. *Hubner*, 73 Md. 228.

This brings us to the clause "without power to sell or
alienate said land, or any part thereof."   This is good
when applied to a gift to a charity, though void in other
gifts.   There is no doubt that a condition annexed to a gift
to a charity, restraining absolutely the alienability of the
estate, is a good one, and outside the ordinary rule, both
in England and in the Federal and State Courts (except
where forbidden by statute, as under the New York Code.)
This, however, as seen by *Peter* v. *Carter*, 70 Md. 139, does
not, in fact, operate as an absolute bar to the alienation of
the estate, if such would be beneficial, as, for instance, if
the proceeds of a sale could be invested to better advan-
tage.   But the Court of Equity will nevertheless maintain
the *fund perpetual* if so provided by the donor.   The
reason always given is that it is in the peculiar nature of a
charity to be perpetual, and it is for the benefit of the charity
that such a condition be imposed.   The apparent violence
which this exception does to the rule against alienation as
a rule of public policy, is wholly nullified by the equally
reasonable corollary, namely, that a Court of Equity, if it
is shown to be advantageous for the interests of the charity,
will direct a sale of the property, still maintaining the *pro-*

*ceeds* as a perpetual fund.  *Peter* v. *Carter*, 70 Md. 139;
*Gray on Perpetuities*, sec. 589, etc.; *Lewis on Perpetuities*,
684, 688; *Bisphams' Princ. of Eq.*, page 201; *Duke on
Charitable Uses*, 80, 81, 361, 377; *Tiedeman on Real Prop-
erty*, sec. 275; *Perin* v. *Carey*, 24 How. 465, 495; *Stanley*
v. *Colt*, 5 Wall. 119; *Jones* v. *Habbersham*, 3 Woods, 445;
*Habbersham* v. *Jones*, (appeal) 107 U. S. 174; *O'Dell* v.
*O'Dell*, 10 Allen 1; *Williams* v. *Williams*, 8 N. Y. 537;
*Root* v. *Stuyvesant*, 18 Wendell, 287; *Witman* v. *Lex*, 17
S. & R. 91; *Yard, Appeal*, 64 Pa. St. 95; *State* v. *Gerard*,
2 Iredell Eq. (N. C.) 210.

Of course this is not affected by the peculiar law of
Maryland as to the invalidity of charitable trusts when no
designated beneficiaries are named.  It is applicable only
to valid trusts over which a Court of Equity has complete
jurisdiction, and is applicable more especially to gifts which
are not in trust at all, being founded in a wholly different
principle.  As when the beneficiaries of a charitable trust,
and its objects are sufficiently certain, equity in Maryland
has the same jurisdiction over them as over any other trust.
*Halsey* v. *Convention*, 75 Md. 281.  This was apparently
the view of this Court in the recent case of *Bennett* v. *Bal-
timore Humane Impartial Society, etc.*, 91 Md. 10, where the
charitable gift was objected to on the ground of its being
a perpetuity.  The Court held that there being in that case
no trust, there was *no perpetuity which the law condemns.*
We are aware of the recent decision of this Court in *Mis-
sionary Society* v. *Humphreys et al.*, 91 Md. 131, but think
that the present case is embraced in a plain distinction made
there, as in the *Bennett case*, that there is no attempt to
create here a charitable trust in perpetuity.  Here the trus-
tees are merely a medium of conveyance, and the gift is to
the corporation absolutely for its purposes, as in the *Pratt
case*.  (88 Md. 615.)

This is not a charitable trust in the sense in which that
term is used in the Maryland law; this is an absolute gift
to a corporation within the scope of its objects, done

through the conveyancing medium of trustees.   The trustee's title is to *convey.*   The societies' title is to use for *certain* purposes.   See *Peter* v. *Carter*, 70 Md. 139;  *Grove* v. *Disciples, etc.*, 33 Md. 451;  *Brown* v. *Renshaw*, 57 Md. 67.

Conditions against alienation are never presumed, and must be stated in express terms, or terms of necessary implication ; they are not favored in law and are strictly construed.   *Newbold* v. *Glenn*, 67 Md. 491; 4 *Kent's Com.* 129. Many similar conditions are found in the reports of this State and never held invalid.   Many conditions upon property used for burying grounds, churches and other charitable uses are in the form that the property shall be used for certain purposes " and to no other use, intent or purpose whatever," or similar expression.   See *Reed* v. *Stouffer*, 56 Md. 236, 254; *Newbold* v. *Glenn*, 67 Md. 492; *Second Univ. Church* v. *Dugan*, 65 Md. 460; *Dolan* v. *Baltimore*, 4 Gill, 394; *Kelso* v. *Stigar*, 75 Md. 369; *Peter* v. *Carter*, 70 Md. 139.

The Court below, when it held the gift void upon the ground that it was coupled with a void condition subsequent, was, we respectfully submit, proceeding upon an equally unsound principle of construction.   One of the main differences between a condition precedent and one subsequent is that when a condition precedent is invalid, illegal or impossible of performance the estate fails ; but when the condition is subsequent, the failure, illegality, impossibility or invalidity of the condition does not affect the validity of the gift, but leaves the gift free of the condition.   In other words, the condition only falls to the ground, leaving the estate an absolute one.   This principle is so fundamental as to require no argument.   In the case cited, where the gift was to A " so long as he shall *hold* and till the farm," the Court struck down the *condition* as void as it attempted restraint upon alienation, leaving the *gift* an absolute fee. *Stansbury* v. *Hubner*, 73 Md. 228.   So in a condition subsequent in restraint of marriage, when invalid.   *Binnerman* v. *Weaver*, 8 Md. 517; *Gough* v. *Manning*, 26 Md. 347;

see generally *Co. Litt.*, 206A; *Tiedeman, Real Prop.*, secs. 274, 275; 2 *Washb., Real Prop.*, \*447, \*448; *Venable, Real Prop.*, 109, 110.   See as to conditions subsequent in restraint of alienation upon charitable gifts.   *Jones* v. *Habersham*, 3 Woods, 445, 472; *O'Dell* v. *O'Dell*, 10 Allen, 1; *Williams* v. *Williams*, 8 N. Y. 537; *Root* v. *Stuyvesant*, 18 Wendell, 287.

This clause being valid as it stands, there can be no interference with the scheme or intent of the testatrix.   Her evident intent was that the society named as devisee should take the property and use it for a definite charitable purpose, and for that alone, and some obligation should be placed upon the society to insure its perpetual use of the property for such purposes.   This is amply covered by the clause "so long as said society shall continue to use said property for said purposes."   This receives no greater nor less effect by the restraining clause withholding power of alienation.   It will, moreover, be noticed that the latter is not a condition, but a withholding of a power.   This power, as has been seen, can, in spite of said clause, be exercised by the charitable devisee, if found by a Court of Equity to be advantageous for the purposes of the society, still maintaining the proceeds as a *perpetual* fund.   *Peter* v. *Carter*, 70 Md. 139.

*William A. Fisher* and *Edward I. Koontz*, for Ashby Lee Baker, John J. Graves *et al.*, appellants.

*As to the legacies in the 19th item of the will, and the 15th item of the second codicil*, no memoranda have ever been found ; and, if they had been, these bequests would have still remained void.   *Saylor* v. *Plaine*, 31 Md. 166.   A number of beneficiaries were mentioned by the testatrix, in conversation with George B. Baker, but it was her purpose to provide, not only for them, but " for the benefit of any of her needy female relatives," and the fund was to be distributed by Baker, "according to his judgment," with that end in view.   This trust, if it could be established, could

not be enforced. *Dulany* v. *Middleton,* 72 Md. 67. These bequests are, however, absolutely null and void in their very inception, because they constitute an attempt to make a testamentary disposition contrary to the essential requirements of the Act of 1884, chapter 293 (Code, Article 93, section 310.) *Chase* v. *Stockett,* 72 Md. 245.

*As to the claim of the Trustees of the Randolph-Macon College,* much evidence (partly excepted to) has been offered by the trustees, but there is a total lack of proof, intrinsic or extrinsic, to support its claim to these bequests, which were not made for its benefit, but which were, despite its solicitations, made for the use and benefit of uncertain classes of *worthy girls and deserving and promising young women.* The charter of the claimant was granted by the State of Virginia by Acts of its Legislature, passed in 1830 and in 1870, for the establishment of a " seminary of learning for the instruction of youth in the various branches of science and literature, the useful arts, agriculture and the learned and foreign languages." The Trustees of Randolph-Macon College conduct institutions at Ashland, Bedford City, Front Royal and Danville, Virginia, and this claimant also owns and conducts the Woman's College at Lynchburg, which is unincorporated and was opened in 1893. The trustees are not specifically interested in mission work. The object of the Woman's College is educational, and its charges to full-pay students amount to as much as $250 per annum, but the trustees aid young women whom they consider to be deserving and promising by free scholarships and loans, and the trustees would consider a young woman preparing herself for foreign missionary work particularly deserving and promising, so far as the church work was concerned ; and a young woman expecting to enter upon missionary work would be *ipso facto* free from any charges for tuition.

In view of the facts it cannot be maintained that the testatrix intended to give the bequests absolutely to the claimant, even though it should be held that she did intend

the bequests for the Woman's College and not for the benefit of certain classes of *worthy girls and deserving and promising young women.*

In many cases this Court has determined that by words, in some instances literally, and in others substantially identical, trusts were constituted. *Church Exten. Soc.* v. *Smith*, 56 Md. 362; *Rizer* v. *Perry*, 58 Md. 115; *Watson Aid Soc.* v. *Johnston*, 58 Md. 139; *Dulany* v. *Middleton*, 72 Md. 67. We contend that there was, therefore, as to both bequests an express and imperative trust, couched in language which the cases recognize as creating such a trust. We contend that the best evidence of that trust may be found in the language itself. In this case there can be no uncertainty as to the intention to create a trust, but there is uncertainty in the objects (to wit, indefinite classes of one or more worthy girls and deserving and promising young women) to be benefited by that trust, and that uncertainty, under the authorities already cited, avoids both bequests, as a Court of Equity would be powerless to enforce them. *Bap. Asso.* v. *Hart*, 4 Wheat. 1; *Trippe* v. *Frazier*, 4 H. & J. 447, decided three years prior to the case in 4 Wheat. *Barnum* v. *Mayor*, 62 Md. 292; *Yingling* v. *Miller*, 77 Md. 109, cited in *Pratt case*, 88 Md. 611.

The bequests cannot be upheld on the ground that they were for the benefit of the Woman's College, because that college is unincorporated, and therefore cannot take as legatee. *Murphy* v. *Dallam*, 1 Bl. 529; *State* v. *Warren*, 28 Md. 352; *Orrick* v. *Boehm*, 49 Md. 105; *Rizer* v. *Perry*, 58 Md. 115, 116, 117, 134; *Isaac* v. *Emory*, 64 Md. 336; *Gambell* v. *Trippe*, 75 Md. 254; *Halsey* v. *Conv.*, 75 Md. 282. There is no difference whether a devise or bequest be immediate to an indefinite object or to a trustee therefor. The interposition of a trustee will not save the legacy. *Dashiell* v. *Atty.-Gen.* 5 H. & J. 399, and 6 H. & J. 1; *Rizer* v. *Perry*, 58 Md. 116; *Eutaw Place Bap. Church* v. *Shively*, 67 Md. 497; *Dulany* v. *Middleton*, 72 Md. 75. The bequests could not be upheld even though the Ran-

Md.]                    Argument of Counsel.

dolph-Macon College had been empowered to select the objects of the provision.   *Gambell* v. *Trippe*, 75 Md. 254.

The distinction between the bequests now under consideration and those in controversy in cases such as that of *Shively* v. *The Eutaw Baptist Church*, 67 Md., and *Hanson* v. *The Little Sisters of the Poor*, 79 Md. 434, is clear.   In the cases last mentioned the beneficiaries were not to be ascertained by the exercise of discretion in the future ; the money·was simply to be used for some of the usual functions of the church or society, as ascertained and directed by the testator.

*Claim of the Trustees of the Corporation of Trinity Methodist Episcopal Church, South, to the bequests to it in the 10th item of the second codicil.*   The duties of an active trust are unequivocally imposed upon the claimant.   Even if it were merely a conduit of title, it is apparent from the face of the codicil (which makes other provisions for Trinity Church,) that it was not intended to give the trustees any beneficial or usufructuary interest in the bequests, all of which we contend are void, in addition to other reason, because they raise an ultimate trust in perpetuity as to the principal of the investments which are directed to be made.   *Needles* v. *Martin*, 33 Md. 618; *Missionary Soc.* v. *Humphreys*, 91 Md. 131.   It is contended, that every bequest in this item is also void under the authorities already cited.

The bequest to the Trinity Auxiliary is open not only to the objection made to the bequest in the *Church Extension Society* v. *Smith*, to the Mite Society, but also to that made to the bequest to the Church Extension Society of the Methodist Episcopal Church for the perpetual loan fund.

It is submitted that the rule against perpetuity laid down in the *Barnum case* (26 Md.), and recently applied in the case of *Missionary Society* v. *Humphreys*, is historically correct, because it was enforced long prior to executory devises in trust, and that it rests in sound reason, because all rules against perpetuities and against restrictions on alienations are founded upon the broad basis of public policy,

and the needs of society.  *Fearne, Rem.*, 10 ed. 502, 430, n. 522; *Fearne, Exec. Int.*, 10 ed. 392; *Gray, Perpetuities*, sec. 202 and page 167; *Wigram (O'Hara), Wills*, pages 374, 377, 382, 386.

*As to the devise of Friendsbury for the Woman's Home Mission Society.*  The testatrix did not devise the property to the society ; she gave power to her trustees not to convey an estate in fee-simple, but such title only as would give to the society the right to use the property for an indefinite period, in the manner indicated by her, and without power of alienation.   This is the only conveyance which she gave the trustees the authority to make, and the question arises, whether, if by reason of the policy of the law, they cannot make a conveyance of this restricted nature, they have any authority to convey at all, and thus violate her declared purpose.   If a power is given only to convey an estate, which, upon grounds of public policy, the law will not recognize, can the trustee convey at all, and, especially, can they convey an estate which the testatrix did not provide for or authorize ; or, to present the actual state of the present case more closely, can they convey an estate which the testatrix has shown an unwillingness to give ? The general principle is, that every power the direct object of which is to create a perpetuity is void.  *Barnum* v. *Barnum*, 26 Md. 172; *Humphrey's case, ante*, p. 131.   Let us suppose that the testatrix had in terms stated that if the law would recognize the validity of the restrictions which she imposed, then the trustees should convey ; otherwise, they should make no conveyance.   It is quite certain that under such conditions it would have been decided by the Courts that there was no power to convey at all, because she had no intention to make the gift unless she was able to accompany it with the restrictions, and the Courts would not make a will for her by requiring a conveyance against the scheme which she had devised.   If the scheme was affected by objections upon grounds of public policy it would fail, and another could not be substituted for it.   As a matter of fact,

Miss Baker could not have evinced more clearly than she has done, her intention that no power was given to convey except in the manner stated by her, not even if she had expressed her intention in the form suggested. She never intended to give the property if the society could alienate, or could make use of it for the erection of buildings or for uses other than those which she had described. Should the restraint on alienation be rejected as repugnant, and the estate held to be absolute, the result would be to vest in the claimant a title which it was not the purpose of the testatrix to give, and to enable it, while taking under the will, to hold against it, and thus to frustrate the very design, and to defeat every motive and to repudiate every considera-tion upon which that title in its final analysis must depend. *Corp. Gloucester* v. *Wade*, 3 Hare, 131.

If the estate could be taken subject to the express restrictions of the devise (and the trustees can convey no other or larger estate,) then the reversionary fee-simple estate or a possibility of reverter would be vested in the heirs at law of the testatrix. *Reed* v. *Stouffer*, 56 Md. 253–4; *Kelso* v. *Stigar*, 75. Md. 390. Such a devise would of course be void as creating an estate in perpetuity, contrary to law and to public policy. *Barnum* v. *Barnum*, 26 Md. 119; *Needles* v. *Martin*, 33 Md. 618; *Deford* v. *Deford*, 36 Md. 176; *In re Stickney's will*, 85 Md. 101; *Humphrey's case*, 91 Md. 131. By the express terms of the will, the property is rendered inalienable not by a subsequent clause inconsistent with and repugnant to a prior absolute grant, but by a clause with which all of the antecedent provisions harmonize and by which it was intended to render them effective.

The devise over to such incorporated society doing mis-sion work as the trustees may deem best, in the event of the failure of the claimant to comply with the conditions imposed upon the devise to it, is void under the authority of *Gambell* v. *Trippe*, 75 Md. 252.

*George Whitelock* and *George R. Gaither, Jr.*, for the execu-

tors, appellees, filed a brief stating that they were not interested in these appeals except as custodians of the fund.

JONES, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court No. 2, of Baltimore City, construing the will of Melissa Baker, late of said city.   The record shows that the testatrix died in March, 1899, leaving a considerable estate and a will with two codicils, in which she made a number of bequests and devises, many of which are free from doubt and have created no difficulty in giving effect thereto in the course of administration of the estate.   Some of them, however, have given rise to doubts as to their proper construction and legal effect, and this case was instituted by the executors of the will for the purpose of having these construed and to have their trust administered under the direction of the Court.

The provisions of the will and codicils, which were adjudicated below, and about which question is made in this Court, read as follows :

IN THE ORIGINAL WILL :

"*Item 18.* I give and bequeath to the Woman's College, located at the city of Lynchburg, in the State of Virginia, the sum of eight hundred dollars, for the education of one or more worthy girls.

"*Item 19.* I give and bequeath to George B. Baker, the sum of three thousand dollars, in trust and confidence that he will distribute and pay over said sum among and to persons and charitable institutions, the names of which and the portions to be paid to each beneficiary will appear in a memorandum which will be hereafter prepared by me or at my request.   And any part of said sum not disposed of shall be distributed by said trustee among worthy persons and charitable institutions in accordance with views which I have expressed to said George B. Baker."

IN THE FIRST CODICIL :

"*Whereas,* by the nineteenth item I have devised and be-

queathed in trust to George B. Baker, to be distributed to persons or charities, to be named in memorandum to be hereafter given, if not given or any surplus, to be distributed by him, at his discretion, to worthy persons or charities, in accordance with my views as expressed to him, the sum of three thousand dollars, I do hereby increase the said amount three thousand dollars, making the amount under this item six thousand dollars."

IN THE SECOND CODICIL:

"*Item 9.* I give, devise and bequeath to the Trustees of the Randolph-Macon College, a corporation organized under the laws of the State of Virginia, four thousand two hundred dollars, to be applied to aid deserving and promising young women, especially such as expect to enter upon mission work, to attend the Randolph-Macon Woman's College, at Lynchburg, as students, such aid to be either by loans or free scholarships, as said trustees may deem best. The receipt of the treasurer of the said board of trustees shall be a complete discharge of my executors for the same.

"*Item 10.* I give and bequeath to the Trustees of the corporation of Trinity Methodist Episcopal Church, South, corner of Madison avenue and Preston street, Baltimore, three thousand five hundred dollars, to be invested in safe securities, and the annual income applied as follows: As to two thousand dollars thereof, to the support of the pastor of said church; as to six hundred dollars thereof, to be paid to the Trinity Auxiliary of the Women's Foreign Missionary Society of the Methodist Episcopal Church, South, to be included in the receipts of the said society and remitted to the treasurer of the Baltimore Conference Society of the Women's Foreign Missionary Society of the Methodist Episcopal Church, South, for the general fund, including five dollars of the same for the conference contingent fund; as to five hundred dollars thereof, to be paid towards the support of the superannuated preachers, their widows and orphans, of the Baltimore Conference of the Methodist Episcopal Church, South; and as to the remain-

der; four hundred dollars, to be given to the infant class of
the Sunday-school of said church, to be contributed by
said class for the support of a little girl in one of the schools
under the care of the Women's Foreign Missionary Society
of the Methodist Episcopal Church, South.

" *Item 13.* I give, devise and bequeath to E. B. Pretty-
man, Wm. W. Smith and George B. Baker, the homestead
property, known as Friendsbury (with the request that the
name of Friendsbury Home be applied to the same), on
which I now reside, consisting of one entire block, with the
buildings thereon, bounded by Baker, Monroe and Presbury
streets and Friendsbury Place, according to the map hereto
attached and made a part of this instrument, in trust, as
follows :

. " If at the time of the probate of my will the Women's
Parsonage and Home Mission Society of the Methodist
Episcopal Church, South, shall have become a body corpor-
ate, capable in law to receive devises, bequests and gifts,
and if within two years thereafter, said society so incorpor-
ated, shall have raised or provided a sum of not less that
ten thousand dollars, as an endowment fund for city mission
work, and shall agree to conduct such work in the city of
Baltimore, and to apply the proceeds of said fund to that
work in said city, and shall further agree to accept the said
homestead property hereby devised, and use the same as
centre of operations in the work of said society, in the city
of Baltimore, then said trustee shall convey said homestead
property, to said Women's Parsonage and Home Mission
Society, of the Methodist Episcopal Church, South, to hold
to the use thereof, so long as said society shall continue to
use said property for said purposes, with full authority to,
erect buildings thereon for mission meetings, lodgings,
orphanage or any purpose connected with mission work,
but without power to sell or alienate said land or any part
thereof.

" And if said Women's Parsonage and Home Mission
Society of the Methodist Episcopal Church, South, shall not

within said two years comply with the conditions above set forth, then my said trustees, the survivors or survivor of them, shall have full power under this codicil to appoint such duly incorporated society doing mission work, in the City of Baltimore, as they may deem best to receive said devise, and shall convey said property to them on the terms and conditions above set forth, but said trustees shall have one full year, after the lapse of said two years from the probate of my will, in which to make said selection and permit the performance of said conditions.

" *Item 14.* I give and bequeath to E. B. Prettyman, William W. Smith and George B. Baker, trustees named in the foregoing item, ten thousand dollars in trust, to pay over the same to the Women's Parsonage and Home Missionary Society of the Methodist Episcopal Church, South, if they shall become incorporated and comply with the requirements of said item ; but if they shall not, then to be applied by said trustees as provided in the last clause of said item.

" *Item 15.* Should any *residuum* of my estate remain after gratifying the foregoing legacies, I give, devise and bequeath all such *residuum* to my nephew, George B. Baker, in trust, to be applied by him under the provisions of the nineteenth item of my said will."

There can be but little difficulty in disposing of the questions of construction here arising, as respects some of the clauses which have been recited. By the provisions contained in the 19th item of the original will, and in the first codicil, together with the residuary disposition, in the 15th item of the second codicil, the testatrix manifestly intended to create a trust, and not to give the beneficial interest in the property, therein intended to be bequeathed to George B. Baker, the person named in these clauses. The beneficiaries of the trust are to be ascertained and pointed out by a memorandum to be left by the testatrix or at the discretion of the trustee, where, or in so far as the memorandum fails to dispose of the funds intended to be bequeathed. This brings these provisions directly within the effect of the

decision of this Court, in regard to a similar testamentary disposition, in the case of *Saylor* v. *Plaine*, 31 Md. 158. In that case the trust was sought to be supported by the actual production of a memorandum left by the testator indicating the purposes to which the subject of the bequest was to be applied.    Here the proof shows there was no memorandum in existence to direct the application of the property intended to be dedicated to the trust, nor are any beneficiaries thereof defined or ascertained in any way other than in the way of verbal suggestions to her trustee to guide his discretion ; making the attempted disposition as contained in the items of the will and codicil here being considered more plainly ineffectual than was the case in the decision of this Court just referred to.    These provisions we regard as too obviously void to require further allusion to them.

On the other hand, the provision in the 10th item of the second codicil which contains the bequest to Trinity Church of thirty-five hundred dollars, which gives to the said church two thousand dollars of the said bequest for "the support of the pastor of said church," is plainly valid upon the authority of the cases of *England, Extr.*, v. *Vestry of Prince George's Par. et al.*, 53 Md. 466, and *Halsey et al.* v. *The Convention of the Prot. Epis. Church et al.*, 75 Md. 275, in which bequests making substantially the same provision as that now being considered, and where the bequests were in terms and language very similar, were upheld.

The proof shows that the church to which the bequest was made is an incorporated body engaged in religious work, and having a pastor as the principal directing agency in this work and an important factor in promoting the object of its corporate existence.    Gifts in aid of so important a function of such an incorporated religious body fall within the scope and effect of other decisions of this Court, even if they were not directly supported by those just referred to.    Of these the case of *Eutaw Place Baptist Church* v. *Shively*, 67 Md. 493, is an example.    This part of the bequest in the 10th item of the second codicil must, therefore, be held valid.

Before leaving this 10th item we may as well examine the other provisions therein contained which are here brought in question. We may say here that as no point has been made as to the slight misnomer of this corporation in the bequest made to it, we need not advert to the misnomer as a matter for our consideration, although it was referred to in the brief of counsel who appeared on behalf of Trinity Church, further than to say that it sufficiently appears from the evidence that the corporation that is making the claim for the bequest contained in this item 10 is identical with the legatee therein named. Next, after the direction in this item 10, that two thousand dollars of the thirty-five hundred dollars thereby bequeathed shall be appropriated to the support of the pastor of the church, occurs, as has been seen, the direction that six hundred dollars thereof shall be "paid to the Trinity Auxiliary of the Women's Foreign Missionary Society of the Methodist Episcopal Church, South, to be included in the receipts of the said society and remitted to the Treasurer of the Baltimore Conference Society of the Methodist Episcopal Church, South, for the general fund, including five dollars of the same for the conference contingent fund."

Now it is evident this six hundred dollars is not given to Trinity Church absolutely, or for its general purposes. It is to take the fund for the use of others, and becomes, therefore, trustee of the fund. The immediate *cestui que trust* is the "Trinity Auxiliary of the Women's Foreign Missionary Society of the Methodist Episcopal Church, South," and it has been argued on this appeal, as it was in the Court below, that this "auxiliary" is an "integral" part of Trinity Church, the legatee; and that, therefore, the bequest is within the principle enunciated in the case of *Eutaw St. Baptist Church* v. *Shively, supra.* This, however, is not deducible from the evidence. From that it appears that it is not an incorporated body, and its organization and objects are described as follows: " The women of Trinity Church have organized an auxiliary of the Women's For-

eign Missionary Society, and they raise a sum every year which they remit to the Treasurer of the Baltimore Annual Conference, and that treasurer remits it to the General Women's Missionary Board at Nashville." It is apparent, therefore, that this "Auxiliary" is not an agency of the church corporation which, like the Sunday-school in the case last above referred to, was organized, controlled and directed in its work by the corporation, and existing by authority of the corporation; but it is an independent, voluntary association called into existence by the volition of the members composing it, and continuing its existence only at the volition and pleasure of its membership. As soon, therefore, as this money (the six hundred dollars in question) is paid over to the beneficiary named (The Trinity Auxiliary) the church corporation would lose control of, and authority over, it; and there would be no one that a Court of Equity could call upon to give an account of it. Then the difficulty of enforcing the trust, or rather the impracticability of enforcing it through a Court of Equity is emphasized in this case because the duty of the "Auxiliary" is only to pay the money in question "to the Treasurer of the Baltimore Conference Society of the Women's Foreign Missionary Society of the Methodist Episcopal Church, South," which, according to the evidence, is another unincorporated body over which a Court of Equity could have no control to compel an observance of the directions contained in the trust.

For the reasons assigned, the provision, in the bequest here under consideration which gives six hundred dollars to Trinity Church corporation for the purposes indicated must be held to be void. And the same must be held as to the two remaining provisions, the next of which is the one giving " five hundred dollars " " to be paid towards the support of the superannuated preachers, their widows and orphans of the Baltimore Conference of the Methodist Episcopal Church, South." We agree entirely with the Court below that this provision is to be pronounced void if

we are to respect the authority of the case of _Church Extension Society of the M. E. Church et al._ v. *Smith, &c.*, 56 Md. 362. In that case this Court was treating of a bequest to the appellant church corporation of a sum of money "to be used as a part of the 'Perpetual Loan Fund' of said society;" and it appearing from the facts agreed upon in the case that this loan fund was a fund " set apart to be loaned to necessitous churches of the Methodist Episcopal Church erected from time to time within the limits of the United States and its territories, and the beneficiaries and recipients · thereof, are such of said churches, as the committee in charge of said fund for the time being, may in their discretion select ." The Court said at page 397: " According to the uniform course of decisions in this State, a trust cannot be upheld unless it be of such a nature that the *cestuis que trustent* are defined and capable of enforcing its execution by proceedings in a Court of Chancery." Then after referring to cases that announce that doctrine, the Court goes on to say : " Here the selection of the necessitous churches for whose benefit the bequest is given depends exclusively upon the will of the committee appointed by the corporation ; if the committee should at any time fail to exercise its discretion, or the corporation should fail to appoint a committee for the care and appropriation of the loan fund, it would be possible for the corporation to appropriate to other purposes the entire fund ; and there are no parties who could maintain a suit to prevent such misappropriation or enforce the execution of the trust, declared in the will. "

Now, in the case at · bar, the church corporation is not given the five hundred dollars disposed of by the provision we are now considering, but, as in the case of the six hundred dollars given for the benefit of the " Trinity Auxiliary," and, as in the case we have just cited from, the church corporation is made the trustee of the fund for the purpose indicated, the intended beneficiaries being " the superannuated preachers, their widows and orphans of the Baltimore Conference of the Methodist Episcopal Church,

South." From evidence in the case it appears that the mode of ascertaining these beneficiaries, is under the discipline of the Methodist Episcopal Church, South, for what is denominated the Joint Board of Finance " to receive all moneys collected, as conference collections or otherwise, and distribute the same to the superannuated preachers, and the widows and orphans of deceased members of the conference, according to their best judgment of their several necessities." The testimony of the pastor of the church, Rev. Charles M. Hawkins, on this point was as follows :

Question. " Please state the manner in which the fund for the superannuated preachers, their wives and orphans is managed after it has been collected."

Answer. " The money thus collected is taken to the annual conference and there turned over to a board called the Joint Board of Finance ; this board examines the case of each superannuated preacher, and the widows and orphans of those preachers, and determines in what proportion to divide this fund, and it is then paid over to these beneficiaries." He then in answer to further questions testified that application is made to the board by those claiming to be entitled to be beneficiaries and their cases are investigated and a decision given accordingly ; that the board first determines whether upon application made there is a proper case in which to allow a share in the fund at all ; and that then the board aims " to distribute the money on the basis of the need of those beneficiaries, some being in more destitute circumstances than others."

Thus it is seen that the allowance of aid to superannuated preachers and their widows and orphans, as ascertained and defined objects, is under the absolute control of the Conference of the Methodist Episcopal Church, South, to the discipline of which the legatee here is subject, and what is denominated their board of finance, and depends upon their voluntary action. Should it be determined by the conference to withhold these allowances altogether and to devote the funds, collected in the manner described, to what

might seem some more important or necessary church ob-
ject, it could be done ; and in any such contingency the
church corporation, here claiming this bequest, would be
unable to perform its trust, as directed, and a Court of
Equity would be equally without power to enforce it ; and
the fund designed to be dedicated to the purpose named in
the bequest could, upon failure of the conference to so
appropriate it, be diverted to other purposes.

The last of the provisions contained in this 10th item of
the second codicil is the one giving four hundred dollars
of the thirty-five hundred, bequeathed to the church cor-
poration therein named, to the church to be given to the
infant class of the Sunday-school " to be contributed by
said class for the support of a little girl in one of schools
under the care of the Women's Foreign Missionary Society
of the Methodist Episcopal Church, South." Here, again,
the church corporation does not take the money bequeathed
absolutely for its general purposes nor to be used in aid of
the exercise of any of its corporate functions. The gift of
the four hundred dollars is a gratuity. The church takes
it upon a trust. The beneficiary, which is left wholly in-
definite and uncertain, is to be selected and ascertained by
the infant class of the Sunday-school. There is no way of
compelling this selection and there is no defined and ascer-
tained beneficiary to ask for an enforcement of the trust.
Under the rule laid down, therefore, in the case of *Church
Extension Society, &c.*, v. *Smith, supra,* and the numerous
cases to which reference is therein made, this provision must
fail.

We will proceed now to examine and construe the remain-
ing provisions of the will and codicils in controversy, taking
them up in the inverse order in which they have been re-
cited. This brings us to the consideration of the 13th item
of the second codicil, which involves necessarily the 14th,
as well as the devise over in the one and the bequest over
in the other. It is not for the Court to construct a will for
the testatrix nor to reconstruct the one which she has seen

fit to construct for herself.   We must take the will which is put before us, ascertain from that the purposes and intention of the testatrix and then give effect to those purposes and her intention, unless we find that the law forbids their execution.   Where we find that the rules of law will not permit the intention to be effectuated, our only duty is to simply so declare.   In the clause of the will we are about to consider the testatrix expressed her wish and purpose with much care and particularity, and there can be but little doubt of what she intended by the provisions therein made. Her evident intention was to dedicate the specific property, which was the subject of the devise, to the specific use and purposes therein so particularly declared, and that it should forever remain *extra commercium* and beyond the power of alienation.   She did not give the property to the corporation for the use for which it was designed, but gave it to trustees with express directions to exact all the conditions she named or with only the power to convey to the corporation upon and with the conditions annexed.   She then provided that if the corporation, which she named to receive the conveyance from the trustees, should fail to comply with the conditions precedent, which she imposed, that they should then have power to appoint some other corporation, doing kindred work in the city of Baltimore, to receive said devise and should "convey said property to them on the terms and conditions above set forth," thus always insisting that the conveyance to be made should be on the terms and conditions which she had prescribed in furtherance of her cherished purpose to have the property dedicated, beyond the power of diversion, to the specific objects expressed in this clause of her will.

It was argued that the testatrix intended to give or did give a fee upon limitation with reverter to her heirs upon a cesser of the uses to which she dedicated the property devised.   But the testatrix gave nothing ; she created a trust to convey, and named trustees to whom she prescribed the conditions upon which they were to convey.   Assuming

without deciding that such an estate could have been authorized, if she had in mind the conveyance of the estate coupled with a condition of reverter upon a cesser of the declared use, why was such a condition omitted from among those so carefully prescribed and why was no alternative provision made to take effect upon such cesser? The answer would seem to be because the testatrix supposed she had provided against any such cesser in directing the trustees to convey an inalienable estate.

Again, it is said, if the restraint upon alienation will impose a condition which the law pronounces void the beneficial devisee will take the estate freed of the condition. The answer, again, is that the testatrix has not made a conveyance nor a direct devise of the property, but has only empowered trustees to make a conveyance. This direction to the trustees, therefore, to convey without power of alienation is at present, or as the case stands here, not a condition annexed to a devise or conveyance, but it is a limitation on the power of the trustees to convey ; and who can say that they would have been authorized to convey at all if it had been known to the testatrix, or in her mind at the time of making the devise, that this condition when introduced into the conveyance she authorized would prove ineffectual. It is further insisted that the restraint of alienation prescribed here would be valid because the beneficial devisee is a charitable corporation. So late as the last term of this Court in the case of *Missionary Society, &c.,* v. *Humphreys, ante* p. 131 a devise to trustees for certain charitable uses was held void, because it offended against the rule of law forbidding perpetuities. It is true that in that case the objects of the charity had only an equitable interest in the property devised, but what difference in reason or principle can it make whether, if a charity cannot have the benefit of an inalienable estate, the estate to be forbidden on that ground be an equitable estate or a legal estate. In the case of *Barnum* v. *Barnum,* 26 Md. 119, the reason of the rule against perpetuities is stated to be that the property, which is limited

beyond the period allowed by that rule, is rendered inalienable and is *"extra commercium."* Obviously it would seem that reason would apply with as much force to an inalienable legal estate as to an inalienable equitable estate. If we had here a direct devise or a conveyance of the property in question it might be more a matter of legal construction which would control. What the testatrix herself might have done is one thing. What she has authorized her trustees to do is quite another thing. The question as presented here is rather one of extent of power, and we are to determine whether the power can be exercised within its limitations so as to effectuate the intention of the testatrix. That intention we have already seen as expressed in the trust created in the item of the will we are considering, was that the trustees therein named should convey to the beneficiary of the devise an inalienable estate in the property devised to them and this the law forbids to be done. *Gray on Restraint on Alienations*, secs. 13 and 23; *Smith* v. *Clark*, 10 Md. 186. Now in the case of *Dolan* v. *Mayor & C. C. of Balto.*, 4 Gill, 394, we find the law governing trustees with respect to carrying out powers of the description we are dealing with here laid down as follows : "Trustees have no power to alter or change the nature and object of the trust, or dispense with the *exact* performance of the conditions ;" and it is further said, "a Court of Chancery has no such power." The trustees in question here, therefore, cannot dispense, in making a conveyance of the property, devised to them under the will of the testatrix, with the conditions imposed upon them by the terms of their trust and in attempting to make the conveyance with those conditions they will be attempting a legally impossible thing. And their act instead of effectuating would really defeat the express wish and intention of the testatrix. As a consequence of the views stated we are constrained to hold the devise in the 13th item of the second codicil and the devise over therein and the bequest in the 14th item, which is interwoven with and dependent upon the 13th item, and the bequest over in the said 14th item void.

By the 9th item of this second codicil the testatrix bequeathed to the trustees of Randolph-Macon College a sum of money, " to be applied to aid deserving and promising young women," etc., as has been recited. The Court below held this to be a good and valid bequest and we think rightly so. The legatee is an incorporated body having for its object the education of the young, and the proof shows that a part of its work is carried on through the agency of what is known as the Randolph-Macon Woman's College, of Lynchburg, which was organized and is operated by the parent corporation in carrying out the general objects of the corporation. The bequest is given directly to the corporation and it is declared that the receipt of its treasurer shall be a complete discharge to the executors of testatrix's will. It is not given as a trust, as has been contended, but it is dedicated by the testatrix to an object directly within the general scope of the objects and purposes of the corporation. That the testatrix indicated the particular use to which the fund is to be applied does not invalidate the gift. *Eutaw Baptist Church* v. *Shively*, 67 Md. *supra; Peter* v. *Carter*, 70 Md. 139; *Barnum* v. *M. & C. C. of Balto.* 62 Md. 275.

Lastly we are to consider the effect to be given to the 18th item of the original will, which has been recited, and which bequeaths the sum of eight hundred dollars to the " Woman's College, located at the City of Lynchburg, in the State of Virginia," " for the education of one or more worthy girls." In regard to this bequest the writer of this, is of the opinion that the clear intention of the testatrix, was to give the eight hundred dollars to the " Woman's College," according to the reading of this item of her will and that the legatee named, being one not capable in law of taking, the bequest is void. The majority of the Court, however, are of the opinion which prevailed with the Court below, that the term " Woman's College" is a misnomer, and that the intention of the testatrix was to make the corporation, " The Trustees of the Randolph-Macon College" the legatee under this item of her will, and that the bequest

is a valid one, for the reasons assigned in treating of the bequest to that corporation under the 9th item of the second codicil.

In the view we have taken of the questions which have been passed upon it has not become necessary to refer specifically to the numerous exceptions to testimony. It will be sufficient to say that in the opinion of a majority of the Court that offered to show the misnomer in respect to the 18th item of the original will was competent and properly introduced to establish the misnomer. The property here which has been named as the subject of the intended trusts that have been held invalid will enure to the benefit of the heirs of the testatrix as to the real estate, and of the next of kin as to the personalty. *Hill on Trustees*, 114 (marg. page.)

It follows from the foregoing views that the decree of the Circuit Court No. 2, of Baltimore City, will be affirmed.

> *Decree affirmed. The costs to be paid out of the funds of the estate in the hands of the executors.*

(Decided June 16th, 1900.)