## MIOCENE DITCH CO. v. LYNG et al.

(Circuit Court of Appeals, Ninth Circuit. May 29, 1905.)

No. 1,135.

1. EMINENT DOMAIN—PIPE LINES—PUBLIC USE—COMPLAINT.

A complaint to condemn a right of way for a water pipe line alleged that a certain creek from its source to its mouth contained large deposits of gravel containing gold in paying quantities; that, in order that the same might be mined and extracted, it was necessary to bring water in ditches, pipe lines, etc., from a distance as contemplated by plaintiff; that such deposits could not be profitably mined otherwise than with a large volume of water; and that it was necessary to enable plaintiff to convey its water to placer claims on the creek, there to be used for the purpose of supplying the owners of such claims with water, that plaintiff have a right of way across defendant's ground. *Held,* that such complaint was demurrable for failure to show a public need for plaintiff's proposed ditch or the right of way over defendant's ground.

2. SAME—AMENDMENT.

Where a complaint to condemn land for a right of way for a pipe line was demurrable for failure to allege a public use, it might be corrected by amendment.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, § 523.]

3. SAME—CORPORATIONS.

Alaska Civ. Code (31 Stat. 321–494; chapter 22, § 204) authorizes the condemnation of land, among other things, for the construction of ditches, flumes, aqueducts, and pipes for public transportation of water to supply mines, etc. Section 210 provides that the complaint in proceedings to exercise the right of eminent domain shall contain the name of the "corporation," etc., in charge of the public use for which the property is sought. Section 225 authorizes foreign corporations created under the laws of any state or territory of the United States to do business in Alaska on complying with certain conditions, but there is no provision in the Code for the incorporation of domestic corporations, except towns and cemetery associations. *Held,* that a domesticated foreign corporation organized under the laws of California was entitled to exercise the right of eminent domain in Alaska to acquire land for a public pipe line to supply water for mining.

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

The appellant (plaintiff in the court below) filed its complaint on the 31st day of August, 1903, in the District Court of Alaska, Second Division, at Nome, against the appellees (defendants below), seeking to condemn a right of way across the defendants' property on Dixon creek, in the Cape Nome Mining District, to convey water for the purpose of supplying mines below the defendants' property on the creek. On October 12, 1904, the appellant filed an amended complaint, in which it is alleged, among other things, that the plaintiff is a corporation organized and existing under and by virtue of the laws of the state of California, and is engaged in business and authorized to do business in the district of Alaska; that by its charter the plaintiff is authorized to appropriate water and water rights, to build canals, ditches, flumes, and aqueducts, and to lay pipe lines for supplying mines with water, for the general use of the public in said district of Alaska; that said plaintiff is actually engaged in said business, and has constructed a system of ditches, flumes, and pipe lines conveying water from Nome river and its tributaries to the tributaries of Snake river, and extending along the left limit of Dexter creek, and around and across Deer gulch, a tributary of Dexter creek, across Grass gulch, tributary of Dexter creek, to the left fork of Dexter creek; that the defendants are the owners of a certain placer mining claim situated on said Dexter creek, known as No. 6 Dexter creek.

in the Cape Nome Recording District of Alaska, and the defendants are all the owners of said property; that said Dexter creek, from its source to its mouth, contains large deposits of dirt and gravel containing gold in paying quantities, and in order that the same can be mined and extracted therefrom it is necessary to bring water in ditches, canals, and pipe lines from a long distance in the manner as done by the plaintiff; that the natural flow of Dexter creek is entirely insufficient with which to mine said deposits of earth and gravel, and a large portion of the time said Dexter creek contains no water whatever; that said Dexter creek below said No. 6 Dexter creek to its mouth, both in the creek bed and on the benches thereof, contains large deposits of gravel and earth with gold in paying quantities therein, and cannot be profitably mined otherwise than with a large volume of water; that it is necessary, in order to enable the plaintiff to convey its water to the placer claims on Dexter creek below said No. 6 Dexter creek, there to be used for the purpose of supplying the owners of said mining claims with water, that plaintiff have a right of way across said No. 6 Dexter creek, the property of defendants.

To the amended complaint the defendants demurred, on the grounds (1) that the amended complaint did not state facts sufficient to constitute a cause of action; (2) that the complaint does not state a public use which will authorize the plaintiff to exercise the right of eminent domain.

The court sustained the demurrer on both grounds, without leave to amend. The case has been brought here by appeal.

Joseph C. Campbell, William H. Metson, Thomas H. Breeze, and Ira D. Orton, for appellant.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts). There is no question but that the court was correct in sustaining the second ground of demurrer. The right of eminent domain can only be exercised in behalf of a public use authorized by law, and in the taking of property necessary to such public use the complaint or petition in such proceedings must show plainly and affirmatively the existence of the statutory authority for the public use, and the necessity of the property for such use. Fork Ridge Baptist Cemetery Ass'n v. Redd, 33 W. Va. 262, 10 S. E. 405, 406. Lewis on Eminent Domain, par. 353, states the law on the subject as follows:

"The petition should show the use or purpose for which the property is desired, and that it is within the statutory powers conferred. It should show a clear right to condemn the property described. Accordingly it must not only show that the property is wanted for a public use, but also that it is the use within the particular statute under which the proceedings are had."

The amended complaint nowhere alleges that the right of way sought to be condemned is necessary for a public use. It is alleged that Dexter creek from its source to its mouth contains large deposits of dirt and gravel containing gold in paying quantities, and, in order that the same may be mined and extracted therefrom, it is necessary to bring water in ditches, canals, and pipe lines from a long distance in the manner done by plaintiff. This may all be true, and still there be no public need for plaintiff's proposed ditch, or the right of way over defendant's ground. For aught that appears to the contrary, the plaintiff may itself own all of the ground it seeks to supply with water, or the owners, whoever they may be, may already be supplied with water from some other source, or they may not care to work the ground, or the ditch may be carried

138 F.—35

over other ground. The public need is not stated; at most, it is only implied, and this is not sufficient. It is alleged, further, that it is necessary, in order to enable the plaintiff corporation to convey its water to the placer claims on Dexter creek below No. 6 Dexter creek, there to be used for the purpose of supplying the owners of said mining claims with water, that the plaintiff have a right of way across said No. 6 Dexter creek. This is not a statement that the property is required for a public use. On the contrary, it would seem to be a private enterprise, having no other purpose than supplying the owners of certain mining claims with water. It is true that, taking the whole complaint together, a public use as well as a public need may be inferred. But an inference is not sufficient in proceedings of this character. There must be a clear, positive statement that the property sought to be condemned is necessary for a public use authorized by law, and supported by a statement of facts from which the court can see that the property is intended to be used for that purpose. Pittsburg, etc., R. R. Co. v. Benwood Iron Works, 31 W. Va. 71, 8 S. E. 453, 2 L. R. A. 680.

But this defect in the amended complaint might be corrected by amendment, and sufficient facts stated to meet the requirement of the law in this respect. The court, however, sustained the demurrer without leave to amend. We must therefore consider the first cause of demurrer, namely, that the amended complaint does not state facts sufficient to constitute a cause of action. This ground of demurrer is based upon the allegation of the complaint that the plaintiff is a corporation organized under the laws of California. The court below held that a foreign corporation in Alaska could not invoke the jurisdiction of the court in its effort to condemn private property for a public use.

The general rule is that a foreign corporation can acquire no right to condemn lands in a state unless such right is expressly conferred by statute. But this rule has been so far modified that the power of a domestic corporation to take land by the right of eminent domain has been held to pass by implication to a foreign corporation, as, for example, where it succeeds by deed to the rights and powers of a domestic corporation. N. Y., N. H. & H. R. Co. v. Walsh, 38 N. E. 378, 42 Am. St. Rep. 734; Abbott v. N. Y. & N. E. R. Co., 145 Mass. 450, 15 N. E. 91; Thompson on Corporations, par. 7932.

If, then, the statutory right may be implied in favor of a foreign corporation, the plaintiff in error contends that the corporation plaintiff in this case is entitled to exercise the right of eminent domain under an implied authority conferred by the laws of Alaska. In the Civil Code of Alaska contained in the act of June 6, 1900 (31 Stat. 321–494; chapter 22, §§ 204–224, pp. 522–527), provision is made for proceedings in the exercise of the right of eminent domain. The right is to be exercised in behalf of certain public uses therein named; among others, those provided in section 204, with respect to

—"Wharves, docks, piers, chutes, booms, ferries, bridges of all kinds, private roads, plank and turnpike roads, railroads, canals, ditches, flumes, aqueducts, and pipes for public transportation, supplying mines and farming neigh-

borhoods with water, and draining and reclaiming lands, and for floating logs and lumber on streams not navigable, and sites for reservoirs necessary for collecting and storing water; roads, tunnels, ditches, flumes, pipes, and dumping places for working mines; also outlets, natural or otherwise, for the flow, deposit, or conduct of tailings or refuse matter from mines; also an occupancy in common by the owners or possessors of different mines of any place for the flow, deposit, or conduct of tailings or refuse matter from their several mines, and sites for reservoirs necessary for collecting and storing water; private roads leading from highways to residences, mines, or farms; telephone or electric light lines; telegraph lines."

In section 210 it is provided that the complaint in the proceedings for exercising the right of eminent domain must contain the name of the corporation, association, commission, or·person in charge of the public use for which the property is sought, who must be styled plaintiff. But we fail to find anywhere in the statutes relating to Alaska any provision for the formation of domestic corporations, except for the incorporation of towns (Civ. Code, §§ 198–203), and the incorporation of cemetery associations (Civil Code, §§ 232–239). We do find, however, in the Civil Code, a chapter devoted to foreign corporations (chapter 23, §§ 225–231).

Section 225 of this chapter provides as follows:

"All corporations or joint stock companies organized under the laws of the United States, or the laws of any state or territory of the United States, shall, before doing business within the district, file in the office of the secretary of the district and in the office of the clerk of the district court for the division wherein they intend to carry on business, a duly authenticated copy of their charter or. articles of incorporation, and also a statement, verified by the oath of the president and secretary of such corporation, and attested by a majority of its board of directors, showing," etc.

Then follows an enumeration of particulars required to be set forth in the statement, and the following provision:

"Such corporation or joint stock company shall also file, at the same time and in the same offices, a certificate, under the seal of the corporation and the signature of its president, vice president, or other acting head, and its secretary, if there be one, certifying that the corporation has consented to be sued in the courts of the district upon all causes of action arising against it in the district, and that service of process may be made upon some person, a resident of the district, whose name and place of residence shall be designated in such certificate, and such service, when so made upon such agent, shall be valid service on the corporation or company, and such agent shall reside at the principal place of business of such corporation or company in the district."

A similar statute in Missouri has been called an act "domesticating the foreign corporation." So. Ill. & Mo. Bridge Co. v. Stone, 174 Mo. 1, 30, 73 S. W. 453, 63 L. R. A. 301. Thompson on Corporations, par. 7933, refers to state statutes of this character as a mode adopted by the states for the domesticating of foreign corporations.

Was it intended by Congress that these domesticated corporations should have the power of exercising the right of eminent domain in behalf of the public uses named in the statute? It was to be exercised by corporations, but it was evidently not intended that such powers should be exercised by municipal corporations or cemetery associations. Indeed, it is manifest that it was intended that they should not be so exercised, since the public uses generally

granted to municipal corporations are elsewhere enumerated in the chapter, and cemetery associations have no occasion to employ these public uses in the exercise of their corporate powers. By this process of elimination the only corporations we have left capable of exercising these public uses in Alaska would be corporations organized under the laws of the United States, or of a state or of a territory where the formation of corporations is authorized by law; and such corporations, having been domesticated under the Civil Code of Alaska, answer every purpose of a domestic corporation.

The plaintiff is a corporation authorized by its charter to appropriate water and water rights, and to build canals, ditches, flumes, and aqueducts, and to lay pipes for supplying mines with water for the general use of the public in the district of Alaska. Upon complying with the requirements of chapter 23 of the Civil Code, it was authorized to transact business in the district of Alaska; that is to say, it was authorized to build the ditch mentioned in the complaint. Now, it may be made to appear that this ditch was for a public use, as has been attempted in the complaint; and if this public use is made to clearly appear, does it not follow that the plaintiff is entitled to exercise the right of eminent domain under the statute? We think this is the intent and fair construction of the statute, and that the demurrer on this ground should have been overruled. The demurrer must, however, be sustained on the ground first discussed.

The judgment of the court below is therefore affirmed, but with directions that plaintiff have leave to amend the complaint as indicated in this opinion.