# REFFON REALTY CORPORATION

## *vs.*

# THE ADAMS LAND AND BUILDING COMPANY.

*Unincorporated associations : title to property. Trustees : Deeds by—.*

The articles of association of unincorporated associations, to which the members give their assent, are binding on them, and should be recognized by the courts, excepting in so far as they may be contrary to some policy of the law, or so inequitable that courts would not enforce them.                    p. 661

Under the articles of association of the Adams Express Company, the trustees "who have possession and control" of its "property, investments and surplus funds," as may "from time to time be transferred to them by the Board of Managers," have active duties to perform, and the Statute of Uses does not transfer from them to the members the title to real estate that is conveyed to such trustees and to their successors, duly appointed and qualified.                                       p. 663

The title to land so conveyed is in the trustees, and not in the members for whom the trustees hold it.                    p. 663

*Decided May 17th, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*C. Alex. Fairbank, Jr.,* for the appellant.

*William S. Thomas* (with whom was *J. Louis Raap* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant and the appellee entered into a written agreement on the first day of April, 1915, whereby the appellant agreed to purchase from the appellee a property in New York for $30,000.00 and one in Baltimore for $100,000.00. The agreement also provided for the conveyance to the appellee by the appellant of certain property in New York. The appellant refused to accept a deed for the Baltimore City property on the alleged ground that the appellee could not give a good, marketable title for it, and the bill in this case was filed by the appellee to compel the appellant to specifically perform the contract in reference to the Baltimore property. The appellant demurred to the bill and this appeal is taken from a decree overruling the demurrer.

The property in question was conveyed to the appellee by Levi C. Weir, Charles Steele and Basil W. Rowe, "as trustees for the Adams Express Company," by deed of March 7th, 1906. The Adams Express Company is an unincorporated joint stock association organized under the laws of New York for carrying on the express forwarding business. A copy of its Articles of Association executed July 1st, 1854, is filed with the bill. The leasehold interest in the property in question was purchased on January 13th, 1880, and the reversionary interest on February 12th, 1881, by William B. Dinsmore, Samuel M. Shoemaker and Edwards S. Sanford, trustees of the Adams Express Company, and the bill alleges that each of the deeds was duly executed and recorded, and contained the following habendum: "To have and to hold the piece or parcel of ground and property above described unto the said William B. Dinsmore, Edwards S. Sanford and Samuel M. Shoemaker and their successors duly appointed and qualified, to the proper use and behoof of the

said William B. Dinsmore, Edwards S. Sanford and Samuel M. Shoemaker, and their successors, duly appointed and qualified forever, in trust for the Adams Express Company aforesaid forever."

The bill also alleges that the property of the association is represented by shares, and that the shares were owned by more than a thousand persons or associates living in different parts of the United States; that the highest Court in the State of New York has decided and still holds that the shares of a joint stock company are personal property; that the shares of the Adams Express Company, since long prior to 1906, have been dealt in on the New York Stock Exchange and elsewhere, so that the shareholders have changed and are constantly changing; that Messrs. Dinsmore and Shoemaker ceased to be trustees by resignation and have since died, and Edwards S. Sanford ceased to be such trustee by death; that the Board of Managers by virtue of the authority vested in them under the Articles of Association appointed new trustees in their places; that Levi C. Weir was duly appointed trustee on the 20th of September, 1894, Charles Steele on the 15th of August, 1898, and Basil W. Rowe on the 21st of August, 1903, and that they were all and the only duly appointed and qualified trustees of the Adams Express Company on the 7th of March, 1906 (the date of the deed to the appellee) and as such held the legal title to the property mentioned in the bill.

It further alleges that the trustees named were shareholders in the Adams Express Company at the times they respectively acted as such, and that at the time of the conveyance of the property to the appellee by the trustees all of the capital stock of the appellee had been issued to and was standing in the names of the three trustees, excepting thirty shares; that the thirty shares had been issued to, and then stood in the names of the incorporators of the appellee, ten to each, and that they were afterwards transferred to the name of the Adams Express Company on the 31st of January, 1911, and on October 2nd, 1912, to the trustee in whose names they

now stand; that the consideration for issuing the stock of the appellee to the trustees, excepting said thirty shares, was the conveyance to the appellee of several parcels of land in the State of New York and Maryland, including the property mentioned in the bill.

The Articles of Association provide in part: First—That the property of the association shall be divided into twelve thousand shares of stock, which number may be increased or diminished as therein provided; that the shares shall be represented by certificates which may be from time to time issued to the associates; that the certificate shall state "that each share is subject to the payment in future of such assessments as may be necessary in cases of loss or other necessity; and also a clause stating in substance that the holder thereof is subject to all the obligations and liabilities of, and entitled to all the privilege of a member of the association, and resting on the shares represented by such certificate as fully as if he had signed the original Articles of Association." Third, that the business of the association may be carried on at the option and direction of the Board of Managers in the name of the Adams Express Company or in the names of such agents or local express firms as are now or may be established and known to the public and which may be purchased up by this association; that the association shall continue until July 1st, 1918, unless otherwise dissolved by law, or according to those articles. Fourth, for transfer, etc., of the shares. Fifth, "The Board of Managers shall appoint from their number not less than three nor more than five trustees, who shall have possession and control of such property, investments and surplus funds of the association as may from time to time be transferred to them by the Board of Managers. The title thereto may be taken and held in the name of 'The Trustees of the Adams Express Company.' Said trustees may act by a majority of their number, and may from time to time designate two trustees to execute transfers of securities. The Board of Managers may remove a trustee and fill any vacancy caused by removal, resigna-

tion, death or disability. Any and all property and funds of the association not transferred to said trustees shall be held, managed, used and applied or invested as the managers may from time to time determine to be for the best interests of the association." Sixth, that the business of the association shall be conducted and governed by a Board of Managers consisting of nine persons who shall appoint and elect the officers, etc., fill vacancies in the managers and trustees, and have powers which are set out at some length. The articles also provide for calling meetings of the associates, the increase in the number of shares of the association with the consent in writing of three-fourths in interest of the shareholders, for assessments on the shareholders, the dissolution of the association at any time by three-fourths in interest of the shareholders, the amendment or alteration of the articles by three-fourths in interest of the shareholders, the declaration of dividends, etc.

It seems to us that the questions raised in this case are free from difficulty. We will not dwell on the distinction between corporations and unincorporated associations, or speak of the advantages one may have over the other. In *"Trust Estates as Business Companies,"* by John H. Sears, can be found interesting discussions of many phases of such companies. JUSTICE HOLMES said in *Phillips* v. *Blatchford,* 137 Mass. 510: "It is too late to contend that partnerships with transferable shares are illegal in this Commonwealth. They have been recognized as lawful by the Court from *Alvord* v. *Smith,* 5 Pick. 232, to *Gleason* v. *McKay,* 134 Mass. 419. Even if the question were a new one, we should come to the same result. The grounds upon which they were formerly said to be illegal in England, apart from statute, have been abandoned in modern times." Other Courts have expressed themselves to the same effect. We understand that there are statutes on the subject in Pennsylvania, Virginia, Michigan, New Jersey, Ohio, New York and some other States. While we have no statute providing for their organization, when the deed was made for the property involved

in this case, we had a statute which this Court held authorized unincorporated associations to sue or to be sued in the names by which they were commonly known—referring to Article 23, section 301, of the Code of 1888 (section 415 of the Code of 1904). In *Littleton* v. *Wells, etc., Council,* 98 Md. 453, where a number of authorities are cited, it was so held. In *My Maryland Lodge* v. *Adt.,* 100 Md. 238, several unincorporated organizations were proceeded against under a bill for an injunction. In *Cannon* v. *Brush Electric Co.,* 96 Md. 446, this Court expressed its views as to the equity of shareholders in an unincorporated association being bound by articles agreed upon by them. Those connected with the United States Company, then before the Court, supposed it was a valid corporation, but it was afterwards determined to be invalidly chartered. In speaking of the legal relations existing between the stockholders it was said they could not be held to be partners *inter sese,* as they did not intend to be partners, but shareholders in a valid corporation, and JUDGE FOWLER, who delivered the opinion of the Court, said, on page 470: "It is but equitable, therefore, that the rights of the stockholders or members of the unincorporated association as between themselves should be governed by the terms and conditions and limitations set forth in the paper which they believed and understood to be a charter, that is to say, upon the articles, conditions and provisions therein set forth 'and subject in all particulars to the limitations relating to corporations' formed under the general laws of this State." If the terms, conditions and limitations set forth in such a paper should govern the rights of those parties, it would be difficult to understand why articles of association of an unincorporated association, like the Adams Express Company, to which the members give their assent, should not be binding on them and be recognized by the Courts, excepting in so far as they may be contrary to some policy of our law, or so inequitable that Courts would not enforce them. Of course when third parties are interested other questions may arise.

Statutes in this State still in force which recognize the existence of unincorporated joint stock companies or associations doing business in this State are section 728 of Article 27 (Vol. 3 of Code), in reference to process in criminal cases, and sections 122 to 126 of Article 56 prohibiting any express or transportation company, or any person, firm, partnership, association or corporation from doing the business of transporting or forwarding goods or packages of any sort or any article of trade or traffic for profit or hire within this State, without first taking out a license as therein provided, and requiring such proposing to do that business to take out a license, and providing penalties for failure to do so. Those sections give the right to associations and partnerships, as well as corporations, to do an express business in this State on obtaining a license and impliedly authorize them to have such property as may be necessary for a proper conduct of their business. In *Snowden* v. *Crown Cork & Seal Co.,* 114 Md. 650, after quoting from *Littleton's case* as to the right to sue an unincorporated association, it was said on page 658: "This is a clear recognition of the ownership of community assets by such a society, and its right to sue for their protection or recovery is equally manifest under the statute. In conferring upon an unincorporated association the right to come or be brought into Court in the name of the society as distinguished from the names of its individual members, the law plainly recognizes not only the existence of a common interest but also its representation by the organized body. The power to sue in such a representative capacity presupposes the right to acquire and possess in the same capacity the interest which a suit might protect."

While that language is broad, personal property was under consideration and the question still is, how can real estate be held and conveyed by such associations? In the absence of some contrary provision in the statutes, the usual way seems to be to hold it by means of trustees. There can be no reason why that can not be done in this State, although the bill alleges that the shares representing the property of the Adams

Express Company are owned by more than a thousand persons or associates. The Articles of Association provide that the transfer of the shares must be on the books of the association, and not otherwise, and the certificates are duly authenticated. There can therefore be no uncertainty about those for whose benefit the trustees hold the property. Indeed that can be made as certain as can be the holders of shares of stock in corporations. There is perhaps no corporation better known in a great part of this country than the Adams Express Company is, and its Articles of Association seem to be fair and reasonable. The trustees who "have possession and control of such property, investments and surplus funds of the association as may from time to time be transferred to them" by the Board of Managers are members of that board. The articles show that they have active duties to perform, and the *Statute of Uses* does not transfer the title from them. *Perry on Trusts,* sec. 300, 305-315; 2 *Cook on Corporations* (6th Ed.), sec. 504; *Claggett* v. *Kilbourne,* 66 U. S. (1 Black), 346; *In re Pillsburg Wagon Works Estate,* 204 Pa. 432, S. C. 54 At. 316; *President, etc., of Natchez* v. *Minor,* 9 Sm. & M. 544; *King* v. *Townshend,* 141 N. Y. 358; *Hart* v. *Seymour,* 147 Ill. 598; *Turner* v. *Ontonagon River Imp. Co.,* 77 Mich. 603." The property in question was conveyed to the three trustees, *and their successors duly appointed and qualified,* and not to the association itself. There can be no doubt that under the above authorities the trustees, and not the members hold the title to the real property.

There can in our judgment be no legal objection to such conveyances as those to Messrs. Dinsmore, Sanford and Shoemaker, trustees, for the property in question, and the only difficulty that suggests itself is whether there should not be some record evidence that the three trustees who conveyed the property to the appellee were the duly appointed successors of the three to whom the property was conveyed. The deeds to those trustees are not in the record, and it is not shown that they state how the successors to the trustees were

appointed.   The Articles of Association do provide that the managers are authorized to fill vacancies in the trustees, and the bill in this case makes the necessary allegations in reference to these matters, which are admitted by the demurrer, but it seems to us that there ought to be some accessible evidence of record to show the facts.   The Articles of Association are not shown to be of record in this State.   Under the circumstances we think the proper course to pursue would be for the defendant (the appellant) to answer the bill; and require proof of the facts to be taken.   We assume that it is willing to do so, but if it is not, then the plaintiff can take the necessary steps to enable it to take the evidence.   The plan suggested will fill the gap in the record title, assuming the facts to be as alleged and admitted by the demurrer. Being of the opinion that the facts alleged in the bill, admitted by the demurrer, are sufficient, the demurrer was properly overruled, but the cause will be remanded and the defendant can then have leave to answer within such time as the lower Court may name.   We might add that the deed referred to in the bill which was executed by the President of the Adams Express Company and ratified by the Board of Managers does not meet the difficulty we suggest above, as that would not convey the legal title, even if validly executed.   As it is not in the record we do not pass on that. We will, under the circumstances, direct the costs to be paid by the appellee.

> *Decree affirmed and cause remanded for further proceedings in accordance with this opinion, the appellee to pay the costs.*