## WILLIAM REISIG ET AL. *v.* THE ASSOCIATED JEWISH CHARITIES OF BALTIMORE ET AL.

[No. 53, October Term, 1943.]

*Decided December 15, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Edward A. Smith* for the appellants.

*Samuel J. Fisher* for the appellees.

MELVIN, J., delivered the opinion of the Court.

The appellants are the leasehold owners of property in Baltimore City, 1916 East Thirty-first Street, in

which the appellees hold the reversion, as beneficiaries under a codicil to the last will and testament of the late Miss Eleanor S. Cohen, of that city. In response to due notice from appellants of their desire to redeem this interest and to acquire thereby the complete fee-simple title to the property in question, both of the appellees tendered their respective deeds and disclaimed the necessity for the appointment of a trustee to accomplish that end. The appellants (plaintiffs below) in their bill of complaint raised the point that a trusteeship is necessary because of the alleged fact that one of the appellees, The Hebrew University of Jerusalem (the correct legal title of which is "The Hebrew University Association"), is an unincorporated association and as such cannot hold or convey real property in Maryland. It is not disputed that the New York corporation it chose as its channel for transferring the title to appellants,—the "American Friends of The Hebrew University, Inc.",— to which it executed its deed in February, 1942, is legally qualified to pass a valid title, as it offers to do, or that the other appellee, The Associated Jewish Charities of Baltimore, is likewise qualified. The issue in the case is, therefore, confined to the legal status of the particular appellee which is located in Palestine. The court below held that a valid title could pass through the proffered deed, without the intervention of a trustee, and it is from this decree that the leaseholders have appealed.

In their admirable presentation of the case counsel for both sides have greatly facilitated the court's determination of the nice questions of title involved, concerning the applicability of the laws of Palestine and the laws of Maryland to a situation which is unusual, if not unique, in this jurisdiction.

The facts of the case are undisputed. The devisor of the ground rents, Miss Eleanor S. Cohen, in a carefully prepared will and in an equally carefully prepared codicil thereto, made plain her desire and intention to execute a charitable trust for the benefit of her coreligionists in Palestine, Baltimore and elsewhere. To

that end, she devised in her will her residuary estate to Dr. Harry Friedenwald, of Baltimore, Maryland, with the late Justice Louis D. Brandeis as an alternate devisee, coupled with the request, however, that the same may be used "for my co-religionists in Palestine, Baltimore, or wherever he may consider that most good can be accomplished." That will was dated April 18, 1934, and under date of November 1, 1935, Miss Cohen made the following codicil to it: "By my will I have devised and bequeathed my residuary estate to Dr. Harry Friedenwald, or alternatively to Justice Louis D. Brandeis, with the intent and purpose that the same be used for the benefit of my co-religionists in Palestine, Baltimore or elsewhere. As I am advised that such disposition of my residuary estate might subject my estate to greater taxation upon my death than would be the case if I had devised and bequeathed my residuary estate to a corporation, I do therefore now modify such disposition of my said residuary estate by devising and bequeathing one-half of the same to The Associated Jewish Charities of Baltimore and the other half thereof to The Hebrew University of Jerusalem; to be applied to the respective purposes of said corporations."

Miss Cohen died in August, 1937, and the devise of her residuary estate became effective in due course thereafter, apparently without any question having been raised until the filing of this suit. It is quite evident that when she named in her codicil these two particular devisees, in lieu of the individuals named in her will, she had no other thought in mind than that said devisees were both bodies corporate and thus entirely free to operate as such in carrying out her expressed intention. When it subsequently developed that the correct nomenclature of The Hebrew University of Jerusalem is The Hebrew University Association, that made no difference legally, but only directed the court's inquiry to the status of the association instead of the university.

In order to establish this status two thoroughly competent witnesses—one of them an expert on Palestine

law—were presented, and their testimony with the documentary evidence, clears the path of legal difficulties in the way of transferring a valid title by both of these devisees, without the appointment of a trustee.

The testimony of this expert, Mr. Haim Margalith, whose qualifications are conceded, as well as that of Mr. Salmann Schocken, chairman of The Hebrew University of Jerusalem, is altogether of a most enlightening character and leaves no doubt that The Hebrew University Association is to all intents and purposes an organization of such nature as to qualify it to hold and transfer title to real property in Maryland. It is, as Mr. Margalith describes it, "a legal entity, a juridic person," and is so recognized by the authorities in Palestine.

This association was formed in 1925 for the sole purpose of governing and dealing with The Hebrew University at Jerusalem. The members of the association are the members of the board of governors of the university, and for an association which was organized, and continues to function, under the law covering associations of Palestine, otherwise known as "The Law of Societies." As Mr. Margalith states, this law is used to a large extent by various philanthropic and educational organizations where there is no profit-making in view. Rules of each of such associations are required by law to be filed promptly after organization with the office of the district commissioner of each district, one of which is Palestine, and kept there on file; also, various changes that take place subsequent to the time of organization are to be reported to the district commissioner's office.

The Hebrew University Association, having been thus organized, formulated its rules and filed them with the district commissioner at Jerusalem, as required. It thus became an association organized and functioning under the law of societies. This law became effective in 1909 under the Ottoman regime and is one of the laws which were retained when Palestine came under the mandate granted to Great Britain after World War No. 1. In

1922 the Palestine Order in Council was promulgated, which provided, among other things, for administration of the laws of Palestine in conformity with the common law and the doctrines of equity in force in England.

In this situation, the courts of Maryland are specially required to take judicial notice of this foreign law and to apply it to the facts of the particular case, "as would be proper if such foreign law were domestic law." Article 34, Secs. 56-58, Annotated Code of Maryland.

Under this law of Palestine The Hebrew University Association, by its duly registered and certified rules, was authorized on behalf of the University of Jerusalem: "(c) to solicit, secure and accept gifts, endowments, bequests, contributions and subscriptions, and to administer and dispose of the same; (d) to borrow or raise money without security or secured with mortgage or other charge on all or any of the property and assets of the Association, and to redeem or pay off any such securities." These rules also provide for an executive council which, subject to the control of the board of governors, shall have the "management and administration of the revenue and property of the Association, the conduct of its affairs, the custody and use of the common seal, and, in particular, but without derogating from the generality of the aforegoing powers, it shall have the following powers, viz: to borrow and raise money, as hereinbefore expressed, and "(2) to invest any monies of the Association (including any trust funds vested in, or entrusted to, the Association) in any such manner and from any such securities as the Association may do, and from time to time to realize or vary such investments * * *."

Without quoting from the various provisions of the law covering associations, as referred to in the testimony of the two witnesses in the case, it is sufficient to say that, based on an examination of this law, as expertly interpreted by them, this court has reached the conclusion, and so holds, that under the law of Palestine this appellee had the legal right to receive and hold

for The Hebrew University of Jerusalem the one-half interest in the ground rent in question. It was in keeping with the objects for which the association was formed, and whether or not this gift or devise received the authorization from the government of Palestine, as required by Article 17 of the law, is beside the point. That provision was invokable alone by the government, and no objection having been raised from that source, the validity of the devise is not affected thereby, so far, at least, as the purpose of the pending suit is concerned.

Having thus acquired a valid title the association has, under that same Article, the power of sale or disposition of this ground rent, so as to convert it into funds of the Association. In addition to this application of the law, it is to be noted that any limitation imposed by it upon the right to hold and dispose of real estate has no extra-territorial force. *Fletcher Encyclopaedia of Corporation Law,* Permanent Edition, Vol. 17, Sec. 8321; *Waters v. Order of Holy Cross,* 155 Md. 146, 142 A. 297.

As stated in the former authority, and affirmed for Maryland by the latter, "it is a general rule that the statute of wills of a state is no part of the charter of a corporation created by such state and has no extra-territorial operation, and therefore, where a corporation has the general power under its charter to take and hold real estate, the fact that the statute of wills of the state of its creation prohibits devises to corporations or imposes restrictions upon such devises, does not prevent it from taking by devises in other states in which devises are allowed * * *. And this rule is in accord with the settled doctrine that the right of a corporation to hold land, and the modes by which it may acquire title thereto, must depend altogether upon the law of the state in which the land is situated."

The point is made that this legal authority is not applicable to Maryland because it is limited to cases where a corporation possesses a general power to take and hold real estate, and that no such power exists in the instant case. However, this point is disposed of by the court's

ruling that, under the Palestine law, The Hebrew University Association does possess the power to take and hold real estate. This ruling is further supported by the express language of the expert, Margalith, in his reply to a specific question asked him by counsel for appellants. The pertinent question and answer, as taken from the record, are: "By Mr. Smith) Q. Now is there any law or regulation or emergency decree that you know of that would prevent a corporation such as The Hebrew University from conveying real property in Palestine? A. No, not so far as I know." The witness added that his knowledge "goes very specifically and distinctly up to July, 1941, when I left Palestine, and in a more general way I can say up to the present day."

Having applied the foreign or Palestine law to the facts of this particular case in the same manner "as would be proper if such foreign law were domestic law" (Art. 35, Sec. 58, Md. Code), we find that the court's above-stated conclusion is still further strengthened by the application of the Maryland law to these facts.

Appellants' main contention is that an unincorporated association cannot hold or convey property in Maryland. However, it is to be noted, as a matter for first consideration, that whether The Hebrew University Association is called by the name of an association, a society, a company, a corporation, or by any other name, the essential factor in determining the issue is not a matter of nomenclature, but rather it is the real nature of the organization that controls. "Whether a given association is called a corporation, partnership, or trust, is not the essential factor in determining the powers of a state covering it. The real nature of the organization must be considered. If clothed with the ordinary functions and attributes of a corporation, it is subject to similar treatment." *Hemphill v. Orloff*, 277 U. S. 537, 72 L. Ed. 978.

This applicable doctrine was invoked in Maryland in connection with Section 117 of Article 23 of the Code, which provides: "As used in this Article, the phrase 'foreign corporation' shall mean every corporation, asso-

ciation or joint stock company formed or existing under the statute or common law of any state (other than this State), territory, district, possession or foreign country, or the United States." It was in construing this statute and declaring it to be constitutional, notwithstanding that unincorporated associations were included in the phrase "foreign corporations," that the Attorney General of Maryland cited the above quoted authority of *Hemphill v. Orloff*. 15 O. A. G. 81 (1930).

The statute was re-enacted by Chapter 504 of the Acts of 1937, thus rendering inapplicable here the Maryland cases principally relied on by appellants to support their principal contention, namely, that "the law of Maryland still is to the effect that unincorporated associations cannot hold and convey real property." It is contended, specifically, that The Hebrew University Association, not being a corporation as that term is understood in Maryland, cannot convey a valid title to the ground rent in question except through a trustee appointed by the court. The particular case upon which appellants base their argument is that of *Reffon Realty Corporation v. Adams Land & Building Co.*, 128 Md. 656, 98 A. 199, 201. There, the court was dealing with the Adams Express Company, an unincorporated joint stock association, and the leasehold interest in the property in question was conveyed, in the first instance, to three trustees and their successors. The title was never in the name of the company but remained in the trustees. The court held that, inasmuch as the trustees, and not the unincorporated association, held the title to the real estate, the conveyance to the purchaser of the property would have to be made by trustees.

The clear distinction between the case just cited and the case at bar is that in the former the title to the property in question had never been held by the Adams Express Company but always in the name of trustees; whereas, in the latter, the devise was direct to the present title holder (The Hebrew University of Jerusalem, or, as it is correctly styled, The Hebrew University Associa-

tion), whose tenure of it has always been exclusive of trusteeship in any form.

Before the Adams Express Company case, *supra,* the court had declared in a case decided in 1911, *Snowden v. Crown Cork & Seal Co.,* 114 Md. 650, 658, 80 A. 510, 513, that the statutory right of a voluntary association to sue in the group name "presupposes the right to acquire and possess in the same capacity the interest which a suit might protect." A gift of stock *inter vivos* to an unincorporated association was upheld, but there was left undecided the question as to whether or not such an association could hold and convey real property without the intervention of a trustee.

In discussing the Snowden case, the court, in the Adams Express Company case, commented: "While that language (hereinbefore quoted) is broad, personal property was under consideration, and the question still is, How can real estate be held and conveyed by such associations? In the absence of some contrary provisions in the statute, the usual way seems to be to hold it by means of trustees." However, as above noted, in the express company's case the court was simply deciding whether or not a conveyance without a trustee could be made for an unincorporated association which had never held title in its own name.

We find no precedent in these cases, or in any other, for denying to an organization of persons clothed with the ordinary functions and attributes of a corporation, comprising a legal entity, which is recognized as such in the jurisdiction where it originated and continues to function, the right to hold and convey property, both personal and real, to the same extent as this right is accorded to a group of persons formally incorporated under the laws of Maryland.

It is clearly and expressly shown by the record in this case that The Hebrew University Association is such a legal entity, with a membership certain and definite, and which is functioning under a law (the "Law of Societies") and rules ("Rules of Associations") of such dig-

nity and effectiveness as to completely remove it from all the essential objections which have heretofore been held to apply to unincorporated bodies.

Moreover, it belongs to a class generally known as "charitable corporations" and the devise to it under Miss Cohen's will was in the nature of a charitable trust. It was for the obvious purpose of giving recognition to this class of trusts in Maryland that Chapter 453 of the Acts of 1931 was enacted. Sec. 279, Art. 16, Code. It is there declared that "as to all trusts hereafter created for charitable purposes, whether by gift, deed, will or other form of settlement, and whether the subject thereof be real or personal property, it shall be no objection to the validity or enforceability of such trusts or of such gift, deed, bequest, devise, etc., that the beneficiaries of such trusts constitute an indefinite class" * * * etc.

Prior to the enactment of this statute the common-law rule prevailed in Maryland. Under this rule an unincorporated devisee could not receive a testamentary gift, "not being an artificial person created by the law, and its membership not being certain and definite, and the courts of this state having no jurisdiction to enforce charitable uses under the statute of 43 Elizabeth, or apart from its provisions." *Snowden v. Crown Cork & Seal Co., supra,* and citing *Dashiell v. Attorney General,* 5 Har. & J. 392, 9 Am. Dec. 572; *Dashiell v. Attorney General,* 6 Har. & J. 1; *Rizer v. Perry,* 58 Md. 112; *State, to Use Trustees M. E. Church v. Warren,* 28 Md. 338; *Orrick v. Boehm,* 49 Md. 72; *Trinity M. E. Church v. Baker,* 91 Md. 539, 46 A. 1020.

Since this Act of 1931 the principles of the statute of 43 Elizabeth, Chapter 4, concerning trusts for "charitable purposes," have been expressly recognized as a part of the law of this State, so that a devise of this character to an unincorporated body is no longer void because of uncertainty or indefiniteness of its members, or because of lack of jurisdiction in our courts to enforce such trusts. *Second National Bank v. Second Nat. Bank,* 171 Md. 547, 190 A. 215. In the case at bar no such in-

definiteness of members exists in fact. The members of The Hebrew University Association (who are the governors of the University) are specifically named in the rules of the association which are required to be filed in the office of the District Commissioner of Palestine. These members hold office for life, and it is expressly provided that "every change in the personnel of the Board of Governors shall be notified for the purpose of registration to the competent authority in Palestine."

As still further evidence that this association is clothed with all the attributes of a body corporate and functions as such, the precise and thorough procedure it took to invest the chairman of its executive council, Mr. Schocken, with plenary power to execute the deed and other necessary papers for transferring title to this ground rent to appellants, is unusually impressive. He made the trip from Palestine with papers and certificates specially prepared to accomplish the purpose desired by all parties, and to meet every legal requirement. Under such circumstances, the appointment of a trustee, as prayed by appellants, would be unnecessary and also contrary to the procedure indicated by the present state of the law in Palestine and in Maryland. Therefore, the decree of the chancellor dismissing the bill of complaint, with costs to be paid by The Hebrew University Association, will be affirmed.

*Decree affirmed, The Hebrew University Association to pay all court costs.*